**KENNEY et al. v. WIGTON–ABBOTT CORPORATION et al.**

Civ. A. No. 5907.

United States District Court
D. New Jersey.

Oct. 15, 1948.

Harold Krieger and Benjamin Chodash, both of Jersey City, N. J., and Herbert Burstein, of New York City, for plaintiffs.

McCarter, English & Studer, and Ward J. Herbert, all of Newark, N. J., for defendants.

MEANEY, District Judge.

This action is brought under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. All of the plaintiffs, as a basis for their claims for recovery, assert that they were clerical workers at the Bayonne Naval Supply Depot and employees of the defendant companies which were engaged in the construction of the supply depot, under a cost-plus-fixed-fee contract. They allege that they were engaged in commerce and in production of goods for commerce, and worked at various times for more than forty hours weekly, and thus were entitled to overtime compensation at the rate fixed by statute. They charge that they were not so compensated, and therefore bring this suit to recover the unpaid overtime wages and an additional amount of liquidated damages because of the failure of defendants to make the overtime payments allegedly due.

The Amended Answer sets up the defenses that some of the plaintiffs were not employees of defendants, but were employees of the United States Navy; that all defendants' employees were engaged in governmental activity and were not engaged in commerce or the production of goods for commerce; that defendants relied in good faith on a circular letter issued by the Navy, containing instructions for overtime compensation; that all plaintiffs received compensation as established by these instructions; that all payrolls were supervised and approved by the Navy; that defendants relied on a release of the Department of Labor, Wage and Hour Division, Office of the General Counsel as an interpretation that none of their employees were entitled to the benefits of the Act;

that defendants relied on a policy of the Navy that the Act had no application to construction of Naval facilities; that the United States was the real party in interest; and that defendants were instrumentalities of the United States and entitled to immunity from the provisions of the Act.

Section 7 of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 207, provides in part as follows: "No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce * * * (3) for a workweek longer than forty hours after the expiration of the second year from such date, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

Section 3(d) of the Act, 29 U.S.C.A. § 203(d) defines an employer as " * * * any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States * * *"

It becomes apparent from the sections of the Act above quoted that, in order to recover, plaintiffs must establish that they were employees of defendants as distinguished from employees of the United States, and that they were either "engaged in commerce" or "in the production of goods for commerce".

It is to the issue of whether plaintiffs were employees of defendants that the court will first address itself.

All of the plaintiffs were carried on defendants' payroll, and were paid by checks of defendants. Social security and unemployment insurance deductions were made by defendants and returns carried the names of plaintiffs as employees of defendants. These facts alone, however, are not determinative since the mode of compensation does not control the determination of whether one is an employee within the meaning of the Act. United States v. Rosenwasser, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301. Neither are common law employee categories or employer-employee classifications under other statutes of controlling significance. Walling v. Portland Terminal Co., 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809. Section 3(e) of the Act, 29 U.S.C.A. § 203(e) defines an "employee" as including "any individual employed by an employer." The term "employ" includes "to suffer or permit to work." Section 3(g), 29 U.S.C.A. § 203 (g).

Plaintiffs Esposito and Mirabella were hired by the Office of the Officer in Charge of Construction for work under the contract. Attendance records of these plaintiffs were kept by the Office of the Officer in Charge of Construction and weekly statements of time were furnished the defendants. Letters from the Officer in Charge of Construction stated that it was desired that these plaintiffs be carried on defendants' payroll. This was done, however, for the convenience of the government. From the evidence, it appears to the court, that Esposito worked as a Navy Checker checking materials and labor at the depot for the Navy. Mirabella was a fiscal accountant checking vouchers, payrolls, and purchase orders submitted by the contractor for reimbursement from the Navy Department. Both Esposito's and Mirabella's employments were terminated by the Officer in Charge of Construction. From these facts the court concludes that Esposito and Mirabella were hired by the Navy, that their work was performed on behalf of the Navy, and that defendants had no control over the hours worked. Consequently, defendants had not suffered or permitted these plaintiffs to work for them and they were not employees of defendants within the meaning of the Act. Walling v. Jacksonville Terminal Co., 5 Cir., 148 F.2d 768; Helena Glendale Ferry Co., v. Walling, 8 Cir., 132 F.2d 616, See also Bowman v. Pace Co., 5 Cir., 119 F. 2d 858.

Plaintiff, Veronica Kenney, was admittedly an employee of defendants from April 31, 1942 to October 24, 1942. The evidence indicates, however, that on October 27, 1942, she was transferred to the Navy. Defendants' employment records disclose a termination order showing ter-

mination of her services as of October 24, 1942, with the remarks "transferred to Navy". A form letter, dated October 27, 1942 entitled "transfer", states that Veronica Kenney was employed by the Office of the Officer in Charge for work under Contract N O y 4676. "Remarks: Transfer to Navy personnel on W A M T payroll. Terminated as W A M T employee 10/26/42". The Officer in Charge reported her time to defendants in the same weekly report which bore the names of Esposit and Mirabella. Her employment was terminated by the Officer in Charge on August 23, 1943. For the reasons above expressed as to plaintiffs Esposito and Mirabella, the court concludes that plaintiff Kenney was an employee of the Navy Department and not of defendants from October 27, 1942 until August 23, 1943.

The testimony offered as to plaintiff, Helen Behr, showed that she was hired by Mr. Walcott, personnel manager for Wigton-Abbott Corporation. Defendants' personnel records disclose an employee's history card, a hiring and assignment card, and an employment termination order, all forms of defendants bearing Helen Behr's name. Her name does not appear on the weekly reports from the Officer in Charge as to time worked by employees of his office. She performed services as a clerk, typing purchase orders for material coming into the project and kept inventory records. Since, by the terms of the contract, materials were to be supplied by the contractors, the court concludes her work was performed on behalf of the defendants. Thus, since plaintiff Behr was hired by defendants, performed work for them, and was terminated by them, the court concludes that she was their employee during the time alleged. See Bowman v. Pace Co., supra.

It was stipulated by counsel at the trial that plaintiff, A. Woodruff, was an employee of defendants from February 22, 1943 to August 30, 1943; that plaintiff Harold Harz was an employee of defendants from April 23, 1942 to April 26, 1943, and that plaintiff William Maher was an employee of defendants from July 16, 1942 to August 16, 1943. Consequently, the court need not consider the employment records of these men.

No testimony or proof having been offered on behalf of plaintiff George Hall, the case must fail as to him since the burden of proof is on such person to show he is within the coverage of the Act. Warren-Bradshaw Drilling Co., v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83.

The next inquiry then must be whether these employees of defendants were "engaged in commerce or in the production of goods for commerce" within the meaning of section 7 of the Act, 29 U.S.C.A. § 207. It is to the activities of the employees to which the court must direct its inquiry rather than to the nature of the employers' business. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, supra; Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. The fact that defendants were primarily engaged in local construction would not prevent some of their employees from being "engaged in commerce" or "the production of goods for commerce" within the meaning of the Act.

Plaintiffs contend they were engaged in the "production of goods for commerce" as well as being engaged in commerce. This contention is based on the fact that part of the project included construction and operation of railroad lines, roads, and docks within the Depot, which are asserted to be instrumentalities of commerce. To support this contention plaintiffs have called the court's attention to Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. That case held employees engaged in operating a toll road and a draw bridge over a navigable waterway were engaged in commerce. The case did not go on the ground that those employees were engaged in the production of goods for commerce and hence is not applicable on this point. The court is of the opinion that these facilities are not "goods, wares, products, commodities, merchandise, or articles or subjects of commerce of any character" within the meaning of section 3(i) of the Act, 29 U.S.C.A. § 203(i). Nieves v. Standard Dredging Corp. 1 Cir., 152 F. 2d 719; Zehring v. Brown Materials, D.C.,

48 F.Supp. 740. The question was left open in Ritch v. Puget Sound Bridge & Dredging Corp., 9 Cir., 156 F.2d 334. Walling v. McCrady Const. Co., 3 Cir., 156 F.2d 932, held that employees engaged in work on roads and streets were engaged in the production of goods for commerce as well as being engaged in commerce within the meaning of the Fair Labor Standards Act. However, in that case it was found that the roads were indispensable to the continuance of production of goods moving in interstate commerce. No such inference can be drawn from the evidence in the case at bar, thus the case is distinguishable. At this point it might be well to consider a defense, having an immediate bearing on this question.

 Defendants assert that all employees of the defendants who worked on the project of constructing the Naval Supply Depot were engaged in governmental activity and were not engaged in commerce or the production of goods for commerce. The mere fact that the work was being done for the government would not take it out of the category of commerce. Walling v. McCrady Const. Co., supra; Fleming v. Gregory, D. C., 36 F.Supp. 776; Magann v. Long's Baggage Transfer Co., Inc., D.C., 39 F.Supp 742. The fact that the work was done to further the war effort would not take it out of the category of commerce. "War does not stop all commerce nor suspend the laws regulating commerce." St. Johns River Shipbuilding Co. v. Adams, 5 Cir., 164 F.2d 1012, 1014. The contract N O y 4676 referred to the defendants as "contractors"; it required defendants to furnish labor, services, materials, and equipment; title to materials, articles, and supplies was to pass to the government when acceptance of title was authorized or approved by the Contracting Officer. In the court's opinion defendants performed their contract as independent contractors and not as agents of the Navy Department or as instrumentalities of the Government. Thus the work done by defendants' employees was of a private nature and did not partake of any sovereign immunity. Nothing in the Act indicates a purpose to exempt from its coverage employees whose work was merely related to

governmental activity. Exemptions cannot be created by judicial construction. Clyde v. Broderick, 10 Cir., 144 F.2d 348.

 Section 3(b) of the Act, 29 U.S. C.A. § 203(b) defines commerce as "trade, commerce, transportation, transmission, or communication among the several States or from any State to any place outside thereof." The test as to whether employees are "engaged in commerce" within the meaning of the Act is not whether their activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of commerce as to be a part of it. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538.

 During the time plaintiff Kenney was an employee of defendants, she performed services as a typist, filling out applications for the hiring of men. Applying the test announced in McLeod v. Threlkeld, supra, plaintiff has failed to establish that her activities were either in commerce or so closely related as to be a part of it. There is no satisfactory showing of a close relation to commerce other than the inference that some of the men hired may have been engaged in commerce. It is the court's opinion that this is not such a close relation to commerce as is contemplated by the above test. A similar situation was presented in Maitrejean v. Metcalfe Const. Co., D.C., 72 F.Supp. 109, where a timekeeper for contractors constructing air bases in Alaska with materials and supplies from United States, Canada and Alaska was held not to be engaged in commerce since there was no satisfactory showing as to his connection with the movement of the materials.

 A somewhat different situation however is presented as to plaintiff Helen Behr. She worked as a clerk, typing purchase orders for material coming into the project. There was testimony at the trial that these materials came from all over the country. In McComb v. Herlihy, 4 Cir., 161 F.2d 568, employees who assisted in ordering goods from out of state were held to be engaged in interstate commerce within the meaning of the Fair Labor Standards Act. In accord with this decision is

Fleming v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395, affirmed 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460. See also Walling v. Goldblatt Bros. Inc., 7 Cir. 128 F.2d 778, 781, certiorari denied 318 U.S. 757, 63 S.Ct. 528, 87 L.Ed. 1130. Reed v. Murphey, 5 Cir., 168 F.2d 257, is distinguishable. In that case the court found the goods and materials, according to the terms of the contract, became the property of the United States, as ultimate consumer, when delivered by the manufacturer to the carrier. The court concluded that since these goods belonged to the Government and were to be used in the prosecution of the war their transportation was not commerce and employees engaged in their purchasing, inspecting, handling, etc., were not covered by the Fair Labor Standards Act. In the case at bar, however, the contract specifically provided that all materials were to be furnished by the contractors, title to pass to the Government when acceptance of title was authorized or approved by the contracting Officer. Moreover, the Government retained the right to inspect and reject any materials found defective. From this, the court concludes that the materials transported to the project had not yet become the property of the Government and were not yet diverted from the stream of commerce prior to the time of delivery to defendants.

It would seem that typing purchase orders was an activity necessary to the procurement of the goods and services and was closely related to the movement of interstate commerce. The court concludes, therefore, that plaintiff Behr was engaged in commerce during the period of her employment by defendants and was covered by the Fair Labor Standards Act, and would be entitled to recover if no other legal factor were involved.

██ Plaintiff A. Woodruff worked as a material clerk, checking materials coming into the project. The evidence does not show whether this work was done before or after the materials were unloaded. If the materials purchased from out of state had come to a permanent rest upon delivery to the depot, they would have lost their character as goods in interstate commerce,

Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, and plaintiff would not have been engaged in commerce while checking the material. On the other hand, if the checking was part of the process of unloading the materials, plaintiff may have been engaged in an activity sufficiently closely related to interstate commerce as to come within the Act. See Clyde v. Broderick, supra. The court, however, does not pass upon this point since the burden of proof has not been sustained.

Plaintiff, William J. Maher, performed services as a clerk checking purchase orders of material coming into the project. The court's remarks as to plaintiff Woodruff are similarly applicable here. No proof has been offered from which the court can conclude that Maher's activities bore a sufficiently close relation to commerce as to be a part of it.

██ Plaintiff Harold Harz was employed by defendants as a guard for five months, then as a clerk in the personnel office lining up men to go to work. In Parham v. Austin Co., 5 Cir., 158 F.2d 566 it was held that watchmen and guards employed by a contractor engaged in constructing a new bomber plant for the United States were not engaged in interstate commerce, nor in the production of goods for commerce. This court agrees with that opinion and holds that Harz's activities were not in interstate commerce or in the production of goods for commerce. Neither were Harz's activities as a clerk in the personnel office in interstate commerce, for the reasons set forth as to plaintiff Kenney.

Defendants in their pleadings assert that they relied in good faith on certain administrative rulings and orders which reliance relieves them of liability on account of failure to pay overtime compensation. Section 9, Portal-to-Portal Pay Act of 1947, 29 U.S.C.A. § 258, provides in part as follows: " * * * no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey

Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged."

Defendants allege that in determining compensation due employees, they relied on a "circular letter" of the Navy Department, Bureau of Yards and Docks, which contained instructions for payment of compensation for employment in excess of the normal work week. The evidence shows that this "circular letter" was communicated to the defendants by the Office of the Officer in Charge and that the payrolls were checked to conform to the circular. It appears that the ruling was complied with and relied upon, in good faith.

The Portal-to-Portal Act itself does not define the term agency as used in Section 9. It speaks of an "agency of the United States". The Wage and Hour Act Administrator in an Interpretative Bulletin, (with which this court, in the circumstances of the instant suit, finds itself in accord), Title 29 Code of Federal Regulations, Chapter V, part 790, section 790.13, 29 C.F.R., 1947 Supp. § 790.13, page 4417, states: "But where the acts or omissions complained of occurred before May 14, 1947, the employer may show that they were in good faith in conformity with and in reliance on 'any' (written or non-written) Administrative regulation, order, ruling, or interpretation of 'any agency of the United States' * * *".

See also: 29 C.F.R. 1947 Supp., § 790.19, page 4425.

The term "Agency" as used in other Federal statutes has generally had a broad meaning. In the Administrative Procedure Act, § 2(a), 5 U.S.C.A. § 1001(a), the term has been defined as follows: " 'Agen-

cy' means each authority (whether or not within or subject to review by another agency) of the Government of the United States other than Congress, the courts, or the governments of the possessions, Territories, or the District of Columbia."

In the Federal Register Act, § 4, 44 U.S. C.A. § 304, the term has been defined as meaning " * * * the President of the United States, or any executive department, independent board, establishment, bureau, agency, institution, commission, or separate office of the administrative branch of the Government of the United States but not the legislative or judicial branches * * *".

In view of the broad definitions customarily used in other statutes and the lack of any limiting terms in this Act, the court concludes that the term "any agency" is sufficiently broad to include within it the Bureau of Yards and Docks.

The court holds that with relation to services performed before May 14, 1947, the Bureau of Yards and Docks is an "agency of the United States" within the meaning of section 9 of the Portal-to-Portal Pay Act and that the "circular letter" issued by the Bureau of Yards and Docks by the direction of its Chief is an "administrative regulation, order, ruling, approval, or interpretation of any agency of the United States". Blessing v. Hawaiian Dredging Co., D.C., 76 F.Supp. 556, 557.

This defense having been established is a bar to this proceeding.

Thus, although plaintiff Behr is covered by the Fair Labor Standards Act, the Portal-to-Portal Pay Act bars her recovery. As to the other plaintiffs it serves as an additional defense. The remaining objections setting forth what seemed to the defendants to be valid defenses based on the Portal-to-Portal Pay Act, the court finds of insufficient substance to require consideration, other than that incidentally addressed to them in the course of this opinion.