DONAHUE v. GEORGE A. FULLER
CO. et al.

Civ. No. 811.

United States District Court
D. Rhode Island.

April 23, 1952.

Harold E. Staples and Edwin H. Hastings, both of Providence, R. I., for plaintiff.

Marshall Swan and Eugene J. Phillips, both of Providence, R. I., for defendants.

LEAHY, District Judge.

This is an action brought by Elizabeth M. Donahue, Administratrix of the Estate of Joseph H. Donahue, to recover unpaid overtime wages and liquidated damages allegedly due the estate under the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq., for overtime hours worked by said Donahue for the defendants George A. Fuller Company and Merritt-Chapman & Scott Corporation during the period from September 16, 1940 through May 3, 1943. The case was heard on complaint, answer, deposition, affidavits, an agreed statement of facts, briefs, and oral argument.

Defendants allege in their answer that this action is barred by the statute of limitations. No further mention of this point, however, is made in their briefs or oral argument. In any event there is no merit in their contention. The plaintiff's claim is not barred by either the applicable Federal or State statutes of limitations. See 29 U.S.C.A. § 255(c) and the General Laws of Rhode Island, Chap. 510, §§ 3 and 8.

On July 1, 1940 the defendants entered into a cost-plus-a-fixed-fee contract, designated NOy–4175, with the United States of America, represented by the Chief of the Bureau of Yards and Docks, Navy Department, whereby the defendant contractors agreed to construct or otherwise accomplish the completion of forty-five listed public works projects at the Naval Air Station, Quonset Point, Rhode Island. The Government designated an Officer in Charge who was to have complete charge on behalf of the Government. In the course of the defendants' work under this contract they employed the plaintiff's intestate.

It is the contention of the defendants that under the contract they were agents of the United States Government rather than independent contractors, that Donahue was an employee of the United States, and that therefore the defendants are not liable to him under the Fair Labor Standards Act. However, in the agreed statement of facts it is admitted that "Mr. Donahue was employed by the defendants for the period September 16, 1940 through May 3, 1943 at various daily wage rates * * *." (Agreed statement of facts, page 2.) Furthermore a fair construction of the contract indicates that the persons employed thereunder were to be employees of the defendant contractors and that said defendants were independent contractors rather than agents of the Government. This is apparent by reason of the fact that the contractors agreed to construct the projects and to furnish all labor and materials necessary therefor. See Articles 3, 9 and 10 of Contract NOy–4175. See also Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017.

It is agreed by the parties that in the course of his employment Donahue worked approximately two thousand overtime hours. It is further agreed that "his work consisted principally of loading, inspecting and timekeeping in relation to the shipment and movement of materials to and from the Davisville-Quonset, Rhode Island area, the Hoboken, New Jersey area, and Fields Point, Providence, Rhode Island area, which activities were carried on by the defendants pursuant to Contract NOy–4175, with ten supplements thereto, with United States of America represented by the Chief of the Bureau of Yards and Docks, Navy Department * * *.

"The shipments with which Mr. Donahue worked involved transportation across state lines and out of the country. The overtime hours worked by him were in the performance of his regular work and not in connection with 'postliminary,' or 'preliminary', or 'portal' activities."

(Agreed statement of facts, pages 2 and 3.) There is no further evidence as to the character of Donahue's employment. The only fair conclusion that can be drawn from these agreed facts is that throughout his employment Donahue was engaged in "commerce," as defined in the Fair Labor Standards Act. 29 U.S.C.A. §§ 203(b), 207. See Durnil v. J. E. Dunn Const. Co., 8 Cir., 186 F.2d 27; Scholl v. McWilliams Dredging Co., 2 Cir., 169 F.2d 729. In view of the nature of Donahue's activities there is no merit in defendants' contention that he was employed in an executive, administrative or professional capacity and that as such he was exempted from the provisions of the Fair Labor Standards Act.

The defendants contend that at the outset of their operations under the contract they were engaged solely in new construction of Naval facilities and other purely local activities, and that they were subsequently engaged in the handling and construction of articles of war and equipment necessary for waging war, title and actual physical possession of which were at all times in the ultimate consumer, namely, the United States Navy. It is well settled, however, that the applicability of the Fair Labor Standards Act does not depend upon the nature of the employer's business, but upon the character of the employees' activities. Overstreet v. North Shore Corp., 318 U.S. 125, 63 S.Ct. 494, 87 L.Ed. 656. It is unimportant whether or not the employer is engaged in interstate commerce; it is the work of the employee which is decisive. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. Thus, although at the outset of their operations the contractors may have been primarily engaged in local construction, this would not necessarily mean that none of their employees were engaged in interstate commerce within the provisions of the Fair Labor Standards Act, and it is apparent from the agreed statement of facts as to Donahue's activities that he was so engaged. Durnil v. J. E. Dunn Const. Co., supra; Scholl v. McWilliams Dredging Co., supra; Kenney v. Wigton-Abbott Corporation, D.C., 80 F. Supp. 489. Furthermore, the fact that the defendants were operating under a contract with the Government and in connection with articles of war does not remove Donahue's activities from the category of "commerce." Powell v. United States Cartridge Co., supra; Jackson v. Northwest Airlines, 8 Cir., 185 F.2d 74, certiorari denied, 1951, 342 U.S. 812, 72 S. Ct. 26; Kenney v. Wigton-Abbott Corporation, supra.

The defendants contend that the materials handled by Donahue were in the actual physical possession of the United States, it being the ultimate consumer, and that therefore Donahue's employment was exempt from the provisions of the Act. But even if the materials were in the actual physical possession of the Government as the ultimate consumer, it would seem that Donahue, under the circumstances of his employment under this contract, was nevertheless engaged in "commerce." Having found that Donahue was engaged in commerce and for that reason was within the provisions of the Act, it would seem unnecessary to decide whether or not the materials he handled were "goods" as defined in the Act, since the term "goods" is used only with reference to the activity of an employee in the "production of goods for commerce", rather than of an employee who is "engaged in commerce". 29 U.S.C.A. § 207. It follows therefore that the defendants' claim that those materials were in the actual physical possession of the United States Navy as the ultimate consumer is of no consequence, since that factor is important only in determining whether materials are "goods" in respect to the "production of goods for commerce". 29 U.S.C.A. § 203(i). In any event I am satisfied that the actual physical possession of the materials on which Donahue worked was not in the United States, the Navy, or in any other Governmental agency. The fact that the title to the materials may have been in the Government does not affect their status as "goods" as defined in the Act. Title is not synonymous with possession. Under the contract the defendants were required to provide all materials for the

accomplishment of the work, and title was to pass to the Government when acceptance of title was approved by the Contracting Officer. Article 10(a) and (e) of Contract NOy–4175. In view of these provisions of the contract and the activities of the parties thereunder, I find that the actual physical possession of the materials at the time that Donahue worked on them was in the defendants and not in the Government or any agency thereof.

As a further defense, the defendants contend that this action is barred by the provisions of § 9 of the Portal-to-Portal Act of 1947, 29 U.S.C.A. § 258, which provides as follows:

"In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, no employer shall be subject to any liability * * * on account of the failure of the employer to pay * * * overtime compensation under the Fair Labor Standards Act * * * if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect."

█ The plaintiff argues that the bar established by § 9 does not apply to "principal" activities as distinguished from so-called "portal" activities. There is nothing in the language of § 9, however, which would limit its application to portal activities, and the plaintiff has not shown to the satisfaction of the Court that § 9 should

be so limited. I therefore find that § 9 of the Portal Act applies to principal activities. See Lassiter v. Guy F. Atkinson Co., 9 Cir., 176 F.2d 984; Darr v. Mutual Life Ins. Co., 2 Cir., 169 F.2d 262, certiorari denied 335 U.S. 871, 69 S.Ct. 166, 93 L.Ed. 415.

█ Upon this construction the plaintiff contends that § 9 of the Act is unconstitutional. Briefly stated the plaintiff's argument is that, Donahue having earned overtime pay under the Fair Labor Standards Act in respect to his principal activities, Congress cannot by a subsequent statute authorize the cancellation of the right to such pay by the method provided in § 9 of the Portal Act. However valid this theory might be in connection with certain vested rights, it is well established that it has no application to such statutory rights as the plaintiff claims herein under the Fair Labor Standards Act. Darr v. Mutual Life Ins. Co., supra; Glowienke v. Hawaiian Dredging Co., D.C., 84 F.Supp. 678; Rogers Cartage Co. v. Reynolds, 6 Cir., 166 F.2d 317, 3 A.L.R.2d 1090.

██ Having found that the Portal Act is applicable to "principal" activities, and that it is constitutional as so applied, the next question raised is whether the defendants have proved, as required by § 9, that their failure to pay overtime to Donahue was in good faith, in conformity with, and in reliance on, any administrative regulation, order, ruling, approval, or interpretation of any agency of the United States or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which they belonged. To establish this defense all the above conditions must be present and the burden of proof is on the defendants. Aubuchon v. Frazier, D.C., 99 F.Supp. 985. It is agreed that the defendants submitted Donahue's wage schedules to the Contracting Officer for approval and that they were approved. The defendants contend that the approval of such schedules, not containing any allowance for time and a half pay for overtime, constituted an administrative order, ruling, approval, or interpretation, or at least an administrative practice of en-

forcement policy in respect to the applicability of the Fair Labor Standards Act to Donahue's employment. I cannot agree that such an approval of wage schedules is sufficient to meet the requirements of § 9 of the Portal Act in respect to a "ruling" or "policy" upon which the defendants could rely. Day & Zimmermann v. Reid, 8 Cir., 168 F.2d 356; Glowienke v. Hawaiian Dredging Co., supra; Rankin v. Jonathan Logan, Inc., D.C., 98 F.Supp. 1.

The defendants attempt to establish an exemption under § 9 of the Portal Act by relying upon a letter (Exhibit 2) dated February 18, 1941, from the Wage and Hour Division of the Department of Labor, to the Secretary of the Navy, in which the Wage and Hour Division advised that the construction of naval air bases in the Pacific was not within the coverage of the Fair Labor Standards Act. Whatever the effect of this ruling may be in relation to both construction and nonconstruction activities, there is no sufficient evidence that it was ever communicated to the defendants in the form received. Later, however, the Bureau of Yards and Docks forwarded a dispatch to the Commandant of the Fourteenth Naval District, reading as follows:

"OINC Construction Letr Ten Jan Re Application Fair Labor Standards Act To Construction Under Fee Contracts X Dept Has Just Received From Dept Of Labor Opinion That Construction Of Naval Air Bases In Western Pacific Is Not Within The Coverage Of The Fair Labor Standards Act X Bureau Interprets This To Apply To All Construction Under Fee Contracts X Comdt Is Authorized To Proceed Accordingly X"

In the affidavit of Miller who was the Officer in Charge of this contract, it appears that he was orally informed of the contents of this dispatch and that he ordered the information contained therein to be relayed to the defendants. He states that this was done. But Miller's affidavit does not disclose when this was done, and the defendant contractors have offered no convincing proof of the date on which they received the information contained in this dispatch. Such proof is essential to sustain the defendants' contention in this case that they relied on this dispatch as a ruling under § 9 of the Portal Act.

The affidavit of McGorrisk states "That the contractors, through myself and my successors, relied upon the interpretations, rulings and instructions given them by the Bureau of Yards and Docks and its officers with reference to the lack of applicability of the Fair Labor Standards Act to the employees involved in the work under the contracts." (Exhibit 5.) There is nothing in this affidavit, however, to show what specific rulings were relied on by the defendants or when the "interpretations, rulings and instructions" were communicated to them. In his deposition McGorrisk indicates that the "rulings" to which he refers in his affidavit are those contained in Exhibit 6 which consists of copies of correspondence between the Officer in Charge, the Bureau of Yards and Docks, the War Labor Board, and the defendants, relating to the applicability of the Fair Labor Standards Act to this contract. It is significant that the first communication contained in Exhibit 6 of any "ruling" sent to the contractors is the Letter of November 26, 1942 from the Bureau of Yards and Docks to the Officer in Charge. This letter was forwarded to the defendant contractors on December 12, 1942.

With respect to this correspondence, it appears that on October 30, 1942 the Officer in Charge wrote a letter to the Chief of the Bureau of Yards and Docks requesting advice as to the applicability, in certain respects, of the Fair Labor Standards Act to this contract. The material parts of this letter read as follows:

"1. Reference (a), called the "Fair Labor Standards Act of 1938", is understood to cover the regulations pertaining to hours and wages to be followed on activities engaged in interstate business.

"2. Section 7 of reference (a) outlines the maximum hours allowable, beyond which overtime pay is mandatory. Information is requested as to whether this Act applies to the subject

contracts. The information is required in order to protect the Government and the contractors against any future claims that may be presented, particularly by administrative and clerical employees who, at the present time, are not being paid overtime on a universal basis."

The letter of November 26, 1942 was in reply to this letter, and on December 12, 1942, two copies of the reply were forwarded by the Officer in Charge to the defendant contractors for their information and files. The material parts of this reply letter read as follows:

"1. By reference (a) the Officer-in-Charge requested advice as to whether the Fair Labor Standards Act is applicable to subject contracts.

"2. The Officer-in-Charge is advised that in the opinion of the Bureau the Act is not applicable to Bureau construction projects because they do not involve inter-state commerce or the production of goods for inter-state commerce."

 The plaintiff contends that this was not a "ruling" under § 9 of the Portal Act because it was made by the Chief of the Bureau of Yards and Docks, who was in effect one of the contracting parties and therefore was not such an agency as was contemplated under the Act. I do not agree with this contention. The authority to act with the sanction of the Government behind it determines whether or not a governmental agency exists. The form the agency takes or the function it performs is not determinative of the question of whether it is an agency. Lassiter v. Guy F. Atkinson Co., 9 Cir., 176 F.2d 984. The fact that the Bureau of Yards and Docks was in effect a contracting party here does not alter its status as an "agency of the United States." Lassiter v. Guy F. Atkinson Co., supra [176 F.2d 985].

 In view of the fact that this ruling pertains to construction projects the Court believes that the contractors were justified in interpreting this ruling as applying to all activities under this project contract, including the activities of Donahue.

This letter of November 26th clearly indicated to the defendants that the request by the Officer in Charge for advice related to the applicability of the Fair Labor Standards Act to this contract, and they had a right to assume that the reply was completely responsive to that request and that it meant what it said, i. e., "that in the opinion of the Bureau the Act is not applicable to Bureau construction projects because they do not involve inter-state commerce. * * *" The ruling was not restricted to "construction," as the plaintiff contends. It related to "construction projects." The contract now before the Court was for a "construction project" and Donahue was employed in carrying out this project.

I find therefore that this ruling having been filed with the Defendants on December 12, 1942, was the first "ruling" from an authoritative and proper agency of the United States upon which the defendants thereafter relied in good faith so as to constitute a defense within the meaning of § 9 of the Portal Act.

Upon consideration of the entire record in this case the Court is satisfied, and therefore finds, that the activities of Donahue were within the provisions of the Fair Labor Standards Act, and that the defendants have not sustained the burden of proof necessary to entitle them to the benefits of § 9 of the Portal Act prior to December 12, 1942. The plaintiff is therefore entitled to recover from the defendants unpaid overtime compensations in respect to Donahue's employment from September 16, 1940 to December 12, 1942.

Section 11 of the Portal Act, Title 29 U.S.C.A. § 260, provides that if the employer shows to the satisfaction of the Court that it acted in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of the Fair Labor Standards Act, the Court may, in its sound discretion, award no liquidated damages or may award a part of what it could award.

152

■ The defendants have not satisfied the Court that their failure to pay overtime wages to Donahue was based upon reasonable grounds. The Court believes that these defendants, employing large numbers of wage earners and with all the administrative facilities at their command, could and should have taken definite and proper affirmative action to ascertain the status of each class of their employees under the Fair Labor Standards Act. Satisfactory proof of such action in respect to' Donahue's employment has not been produced. Therefore, the Court will award to the plaintiff liquidated damages in an amount equal to the unpaid overtime compensation found to be due Donahue.

By agreement of the parties certain affidavits have been made available to the Court for its consideration in this action. Objections to the affidavit of French have been disposed of by agreement of counsel.

The defendants have objected to the admission in evidence of the affidavit of Kelley, a former employee of the Wage and Hour Division, principally on the ground that the statements therein are hearsay. It is apparent to the Court that these statements are based on hearsay and that such statements are not the best evidence of many of the facts referred to therein. Consequently the defendants' objection to the admission in evidence of Kelley's affidavit is sustained.

The defendants have also objected to the admission in evidence of the affidavit of Monat, another former employee of the Wage and Hour Division, principally on the ground that it is immaterial and irrelevant. The Court finds that this affidavit is immaterial to the issues in this case, and the defendants' objection thereto is sustained.

Computation of the amount due the plaintiff shall be made from the records of the parties in accordance with this opinion. Upon presentation to the Court by counsel of an appropriate form of order, the Court will determine the amount due and will also hear the parties on the plaintiff's prayer for an allowance for attorneys' fees.