TODD v. ROANE-ANDERSON CO.—251 S. W. (2d) 132.

Eastern Division at Knoxville. January 29, 1952.

Petition for Certiorari denied by Supreme Court, June 7, 1952.

Thomas W. Thomson, of Knoxville, for appellant.

E. H. Rayson, and R. R. Kramer, both of Knoxville, for appellee, Kramer, Dye, McNabb & Greenwood, of Knoxville, of counsel.

SWEPSTON, J. Complainant sued to recover overtime compensation as an employee of defendant. From an adverse decree he appeals and assigns error.

By the bill as amended he seeks to recover under three theories, to wit:

(1) Upon his contract of employment;

(2) Under the Fair Labor Standards Act, 29 U. S. C. A. Sec. 201 et seq.;

(a) That he was required to remain ''on call'' 24 hours a day for seven days a week during the period of his employment which would amount to 128 hours per week in excess of his 40 hour week; or

(b) In any event that he worked 70 hours per week and would therefore be entitled to overtime of 30 hours per week;

(3) Under the Act of Congress of July 2, 1940, Public no. 703, 54 stat. 712.

The defendant was employed on a "cost plus fee" basis by the United States under a prime contract as a service organization at the atomic energy project then known as the Clinton Engineering Works, Oak Ridge, Tennessee.

Complainant was employed by defendant January 4, 1944 in the job classification of automotive service supervisor until July 28, 1944.

The job classifications and rates of pay were fixed during this period pursuant to the Wage Stabilization policies of the United States.

Complainant's insistence under his first theory and first assignment of error is that his contract of employment provided a rate of pay of $1.50 an hour for 40 hours per week and time and one half for all hours over 40.

His testimony is that he was hired by Mr. Roberts, general superintendent of equipment, and no one else was present; that Roberts told him his pay would be straight time at $1.50 an hour, until defendant could get approval from Washington for overtime pay and then he would receive his back overtime pay in full.

The testimony of Roberts is that complainant was hired on a weekly basis of $60 for a 40 hour week and for overtime he would receive the same rate of pay, which is $1.50 per hour. Roberts is supported by defendant's exhibits 2 and 4 showing the employment was on a weekly basis and by exhibits 38 and 39, which are the wage schedules respectively for the non-manual and manual employees which became effective November 6, 1943 and were in effect during the entire time of complainant's employment; these rates were controlled by the War Department Labor Board and other stabilization agencies. R. 311 and 312.

The undisputed evidence is there was never any proposal to change the non-manual rates; there was not, until June 5, 1944, any discussion of changing any rates and then only the manual rates were eventually changed in June 1944.

Exhibit 38 shows that Todd's job classification is listed in Schedule B as non-manual and that all employees under this schedule were to receive pay on a weekly basis of 40 hours with straight time for overtime, whereas under exhibit 39 all schedules were set up on an hourly basis with time and one half for all hours in excess of 40.

Roberts denied he had promised Todd he would receive time and a half for overtime.

■ If Roberts had so promised Todd, it would have been a violation of law and subject to severe penalties under the Wage Stabilization policies in effect at the time; as to any criminal penalties, there would be a prima facie presumption that defendant had not violated the law; as to the civil penalties, there is no presumption of innocence, but in the absence of evidence showing a reason for violation, it is a fair practical assumption that the law was not violated.

■ Therefore, in reviewing this case under Code Section 10622, we are unable to hold that the evidence preponderates against the decree below.

■ Again, under the then prevailing public policy expressed in the statutes and regulations as to Wage Stabilization a contract in violation of such laws would be void and unenforceable, because otherwise the legislative purpose of the acts would be thwarted. Biggs v. Reliance Life Ins. Co., 137 Tenn. 598, 604, 195 S. W. 174; Watterson v. Nashville, 106 Tenn. 410, 61 S. W. 782; Shirley v. Shirley, 181 Tenn. 364, 369, 181 S. W.(2d) 346; Am. Fed. of Labor v. Roane-Anderson Co., 185 Tenn. 363,

206 S. W. (2d) 386; State ex rel. Toser v. Nat'l Optical Stores Co., 189 Tenn. 433, 225 S. W. (2d) 263.

The instant suit in this aspect is for breach of contract and not for fraud.

It further appears from Todd's testimony that even if time and half for overtime was mentioned, the payment of same was conditional on defendant's obtaining approval of same from Washington. Todd offered no evidence of same having been obtained and the uncontradicted evidence of defendant is that it was neither sought nor obtained for employees of Todd's job classification, as above stated.

This assignment is overruled.

The second assignment is directed at the holding of the Chancellor that Todd was a non-manual employee in an executive or administrative capacity and therefore within the exemption contained in Section 13(a) (1) of the Fair Labor Standards Act of 1938.

The Chancellor held that Todd was "engaged in commerce" but not in the "production of goods for commerce". Neither party has assigned error as to the first or affirmative holding. Hence, it is assumed he was within the scope of the Act, unless exempt under 13(a) (1).

Counsel are in agreement that the following tests were applied by the Wage and Hour Administrator during the time complainant was employed in determining whether a person was an executive employee:

"The term 'employee employed in a bona fide executive * * * capacity' in Section 13(a) (1) of the Act shall mean any employee

" '(A) Whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

" ' (B) Who customarily and regularly directs the work of other employees therein, and

" ' (C) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

" ' (D) Who customarily and regularly exercises discretionary powers, and

" ' (E) Who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

" ' (F) Whose hours of work of the same nature as that performed by non-exempt employees do not exceed 20 per cent of the number of hours worked in the workweek by the non-exempt employees under his direction provided that this subsection (f) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment' ''.

The original bill signed and sworn to by Todd alleged "he was employed by the defendant as a mechanical and operational supervisor having charge exclusively of heavy equipment and the repair and maintenance of streets and roads and was assigned the duty of supervising the repair of said machinery and its use. Your complainant had under his jurisdiction many people ranging from 25 to about 75''.

The case was tried on oral testimony under a written stipulation filed in the cause and was heard by the Chancellor, who held that Todd was an executive employee and dismissed the bill.

On that hearing Todd testified in accord with the above quoted allegations of the bill; he testified he did some

manual work before they obtained a larger number of machines, but that his main job was supervisory.

A petition to rehear having been granted, additional evidence was adduced and Todd testified that he did 50% of the repairs in the shop and in the field by his own manual labor on the heavy machines. R. 154. And that he had under his supervision only 15 or 20 people, and denies he was a supervisor. R. 178.

█ This testimony is self contradictory and no plausible explanation of the fact is made, so the effect is it cancels itself, under Donaho v. Large, 25 Tenn. App. 433, 158 S. W. (2d) 447, and cases cited therein.

There is evidence that he did occasionally do some manual labor, but of several witnesses called for the second hearing none substantiated his claim as to time worked manually.

Clarence Lee contradicts himself twice. He testified Todd worked half of his time manually, but then says he saw Todd very seldom. Again, he testified he never worked with Todd, but later says he did.

C. W. Hill first testified Todd did manual work all the time, and worked many a day with him all day long. Later he said he had no idea how many hours a week Todd worked manually. He was very evasive of the question asked him as to Todd's telling men where to work.

R. L. Lynn testified Todd was a foreman and he tells what Todd really did, that he was here and there supervising the work. R. 137. He then insists that Todd did manual work on the machinery, but he damages the value of his testimony by stating that he himself worked most of the time in the shop until he was put on a repair truck to go into the field and then Hill was witness' partner;

after which time he did not go out on a truck anymore with Todd. R. 140.

He then contradicted himself as to whether Todd recommended him to Todd's superior as a good mechanic.

Those witnesses were obviously trying to minimize Todd's supervisory activities.

On the other hand J. R. McClellan, the superintendent of roads and streets in the project testified that he saw Todd in the field frequently, never saw him working manually, and Todd had about 20 machines and 5 or 6 foremen in various places around the project.

It has already been shown by the weight of the evidence that Todd was hired on a weekly basis. The fact that his overtime was figured on the basis of $1.50 per hour does not convert his contract from weekly into hourly employment. Smith v. Porter, 8 Cir., 143 F. (2d) 292; Gorchakoff v. California Shipbuilding Co., D. C., 63 F. Supp. 309; Walling v. Clinchfield Coal Co., 4 Cir., 159 F. (2d) 395; Delano v. Armstrong Rubber Co., 1950, 136 Conn. 663, 73 A. (2d) 828.

Todd testified, R. 167 and 174, that he passed on the qualifications of operators of the machines and recommended the hiring of certain men.

Other employees who were Todd's superiors testified that they relied on his recommendations.

As to his discretionary powers it is undisputed that he directed his several crews where to work and what to do and that he was in charge of this entire work or department, subject of course to certain superiors.

This we think is similar to but stronger than the facts in Smith v. Porter, supra, where the foremen of crews engaged in constructing a railroad were held to be exempt.

We think he has failed to show he spent any substantial time, certainly not 20% in manual work.

■ We are therefore of opinion that the evidence does not preponderate against the decree below that Todd was exempt from the Act as an executive employee.

We overrule the assignment.

Under assignment six he complains of the holding he was not "on call" 24 hours a day.

He testified that he was requested to live on the premises for emergency call and did so, and the defendant required him to leave word with the foreman or his family of his whereabouts when off regular duty. But he did not testify that he was not free to go where and when he chose during night or other off time.

■ This is not sufficient to entitle him to "on call" pay for the full 24 hours per day. He is entitled to pay only for the time spent on such calls, but there is no evidence of this limited aspect nor any claim made for same. Dumas v. King, 8 Cir., 1946, 157 F.(2d) 463; Howard v. Southern Continental Tel. Co., D. C. 1944, 72 F. Supp. 276; Super-Cold Southwest Co. v. McBride, 5 Cir., 1941, 124 F. (2d) 90.

This assignment is overruled.

The fourth assignment is directed at the holding of the Chancellor that any claim herein made for overtime under the Fair Labor Standards Act of 1938 is barred under Section 9 of the Portal-to-Portal Act of May 14, 1947, 29 U. S. C. A. Sec. 251 et seq.

Section 9, 29 U. S. C. A. Sec. 258, provides as follows:

"In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay mini-

mum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect''.

■ It is thus seen that to establish this defense, the employer must show that (1) he acted in good faith and in conformity with and in reliance (2) on an ''administrative regulation, order, ruling, approval'' etc. of an agency of the United States.

The evidence is undisputed that the defendant prepared the tentative wage schedules, etc., submitted them to and obtained the approval of, the District Army Engineer representing the War Department and the United States at Oakridge in November 1943 and the same were approved in April, 1944 by the War Department Wage Administration Agency in Washington; that the officials of defendant relied on same and employees were paid in accord with those schedules and that the officials of defendant had no reason to believe they were inconsistent with any federal laws regulating wages and hours.

■ While there is conflict of authority as to the proper test of good faith, the weight of authority applies

the standard of what "a reasonable" person would do under the circumstances. Lassiter v. Guy F. Atkinson Co., 9 Cir., 1949, 176 F. (2d) 984, 21 A. L. R. (2d) 1313, and other cases in 3 A. L. R. (2d) 1190 and 1191.

The Lassiter case is quite similar on the facts to the instant suit. It holds also that the War Department with its corps of Engineers, Contracting Officers and Wage Administration Agency are "agencies of the United States" and that the various communications relating to wages and hours are "administrative regulations" etc. of such agencies.

See also, Rogers Cartage Co. v. Reynolds, 6 Cir., 1948, 166 F. (2d) 317, A. L. R. (2d) 1090, holding a directive of National War Labor Board to be within the meaning of the statute. Also, Blessing v. Hawaiian Dredging Co., D. C. 1948, 76 F. Supp. 556; Kenney v. Wigton-Abbott Corp., D. C. 1948, 80 F. Supp. 489.

 We are of opinion that defendant has established this defense and the assignment is overruled.

The fifth assignment is that the court held the Walsh-Healey Act did not apply and became a part of the contract between defendant and the United States. There is no assignment as to the Act of July 2, 1940, hence we take it that counsel relies upon the Walsh-Healey Act, 41 U. S. C. A. Secs. 35-45.

Powell v. U. S. Cartridge Co., 339 U. S. 497, 70 S. Ct. 755, 94 L. Ed. 1017, reversing the same case in 8 Cir., 174 F. (2d) 718, holds, that the Fair Labor Standards Act and the Walsh-Healey Act are not mutually exclusive, but are mutually supplementary, so that employees of a private contractor with the United States on a munitions plant, owned by the Government under a contract made pursuant to the Walsh-Healey Act may maintain a suit for overtime under the Fair Labor Act.

■ The Walsh-Healey Act, however, is not applicable to the maintenance of this action for several reasons not necessary to state except that the Act gives no right of action to the employees, but expressly limits the action to being brought in the name of the United States by the Attorney General for damages to the United States plus unpaid wages to be held and paid out by the Secretary of Labor to all who make claim from him within one year. United States v. Loveknit Mfg. Co., 5 Cir., 1951, 189 F. (2d) 454.

■ Moreover, if a right of action lay in the name of the employees, it is barred on the evidence in this case by Section 9 of the Portal to Portal Act, for the reason stated in the discussion under assignment four.

■ We find no discussion in the brief as to assignment three and therefore treat the same as abandoned.

The last assignment, No. VII, complains of the holding that appellant was not engaged in the production of goods for commerce etc.

■ This is immaterial, in view of the holding that he was engaged "in commerce", to which defendant has not assigned error. This put him within the scope of the Fair Labor Act, leaving the question of exemption under 13(a) (1), which has been dealt with, supra.

This assignment is overruled.

A decree will be entered here affirming the decree of the Chancellor with costs of the appeal against appellant.

Anderson, P. J., concurs.