CHARLES OTIS LAWSON v. THE MASON AND
DIXON LINES, INC. and Ted Jones.

MARSHALL LAWSON v. THE MASON AND DIXON
LINES, INC. and Ted Jones.—451 S.W.2d 692.

Eastern Section.  October 10, 1969.

Certiorari Denied by Supreme Court January 19, 1970.

Hyder, Jenkins & Boyd, Rogersville, Hunter, Smith, Davis, Norris, Waddey & Treadway, Kingsport, for appellants.

Tom H. Rogan, Rogersville, for appellees.

COOPER, J. Charles Otis Lawson brought suit by next friend to recover damages for personal injuries sustained by him when the automobile in which he was riding was in collision with a tractor-trailer owned by the defendant, Mason-Dixon Lines, Inc., and driven by its employee, the defendant, Ted Jones. His father, the plaintiff Marshall Lawson, filed a companion suit seeking to recover the cost of the medical treatment provided his son, and to recover for the loss of his son's services. The two cases were tried together and resulted in jury verdicts in favor of the plaintiffs—Charles Lawson being awarded $2,000.00 and his father $3,061.60. The defendants have appealed insisting there is no material evidence to support the verdict, that the physical facts can not be reconciled with the direct testimony of the plaintiffs.

In considering these issues, we must bear in mind the rule so well stated in D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 508, 206 S.W.2d 897, 901, as follows:

"While these issues involve a review of the evidence, such review is not to determine where the truth lies or to find the facts, that not being our province in jury cases. It is only to determine whether there was any evidence to support the verdict; and it must be governed by the rule, safeguarding the constitutional right of trial by jury, which requires us to take the strongest legitimate view of all the evidence to uphold the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict."

■ Plaintiff, Charles Lawson, was a passenger in an automobile being driven by Charles Wade in a southerly direction on Brewer Street. The tractor-trailer of the defendants was being driven in an eastwardly direction on the bypass. The vehicles collided near the outer, or southern edge, of the bypass pavement. There is testimony that the point of *first* contact between the two vehicles was the left front fenders. The force of the impact spun the Wade automobile around so that it was facing toward the north. The tractor-trailer continued through the intersection and came to rest in a ditch on the north (opposite) side of the bypass some 300 feet from the intersection.

Though controverted, there is evidence the Wade automobile stopped near the paved portion of the bypass, preparatory to entering the intersection. The plaintiff testified that, at that time, the tractor-trailer was near the construction site of a new overpass, which he estimated to be 1000 feet west of the intersection, and was moving at a speed of approximately 70 miles per hour. The plaintiff fixed the speed of the Wade automobile at 2

to 3 miles per hour as it entered the intersection. Other testimony fixed the speed at 5 to 10 miles per hour.

Bert Reed, also a passenger in the Wade automobile, placed the tractor-trailer nearer to the Brewer Street intersection than the new overpass at the moment the Wade automobile entered the intersection. At first Reed estimated the distance to be 500 feet. Later, he testified the distance was from 500 to 1000 feet. At the instance of defendants and with the aid of a photographer, Mr. Reed pointed out to the jury the location of the tractor-trailer. Later in the trial, the jury was given the measured distance between the Brewer Street intersection and the intersection to the west of Brewer Street. This gave the jury a measured point of reference to aid it in its determination which of the two extremes of distance was more correct.

Pictures of the accident scene show that the defendant driver did not apply his brakes with sufficient force to leave tire marks until he entered the Brewer Street intersection.

The defendants, in their brief, take the position that the testimony of the plaintiff is incredible, that no reasonable person could logically conclude that defendant's tractor-trailer travelled 1000 feet during the time it took the automobile in which plaintiff was riding to travel half-way through the intersection. If this were all the evidence offered in behalf of the plaintiff, we would tend to agree with defendants' argument; but, it is not all the evidence. The testimony of Mr. Reed, as reflected by the record, halved the distance the defendants' tractor-trailer had to travel and doubled the distance the Wade automobile travelled. These distances, when considered in the

light of the evidence of excessive speed on the part of the defendant and the slow speed of the Wade automobile, lends credibility to plaintiff's contentions; and, in our opinion makes the issue of credibility as well as the issues of negligence, contributory negligence and proximate cause issues for the jury to decide. Then too, in our review, we are confronted with the fact the jury considered material evidence on these issues not set forth in the bill of exceptions. As heretofore noted Mr. Reed, using a photograph in evidence, pointed out to the jury the location of defendants' tractor-trailer at the time the Wade automobile entered the intersection, and the jury later was given a measured point of reference which would be of aid to it in determining for itself the true distance the tractor-trailer was from the intersection. The indicated tractor-trailer location was not marked on the photograph, nor was it described by the witness in reference to a landmark visible in the photograph. Without this evidence in the bill of exceptions, we must conclusively presume the evidence supports the jury's findings that the negligence of the defendant driver was the proximate cause, or proximate contributing cause, of the accident and plaintiffs' resulting injuries and damages.

In a supplemental brief, the defendants cite us the recently decided case of Tennessee Trailways, Inc. v. Ervin, etc., 222 Tenn. 523, 438 S.W.2d 733, without comment. We take it, however, that it is cited in support of the insistence that the defendant driver's conduct was not a factor in causing the accident, and that the sole cause of the accident was the negligence of Wade in driving into the intersection when the tractor-trailer of defendant was in full view.

The court in the Trailways case did not establish a general rule that the speed of the driver of an automobile on a favored highway could not be a proximate cause of an intersection accident, but held only that "in the fac[e] of uncontroverted testimony showing that plaintiff's intestate suddenly rode into the path of the oncoming bus, whether defendant's bus was traveling 73.5 or at 63 miles per hour becomes insignificant. It is plain that the immediate cause of the collision was not the speed of the bus; but apparently the sudden and heedless entry of plaintiff's intestate onto the north side of the highway."

The court goes on to say that "it is clear that if the speed of the bus at the time of the accident had been in point of fact an element of the question of proximate cause, a disputed question of fact requiring submission of the case to a jury might have been posed."

In the instant case, there is evidence the Wade automobile entered the intersection when the tractor-trailer of the defendants was some 500 feet from the intersection, and had substantially traversed the intersection when the collision occurred. A reasonable inference to be drawn from this, we think, is that the Wade automobile could have passed through the intersection in safety if defendant's speed had been fifty miles per hour, as required by statute, rather than seventy miles per hour, or if the defendant had slowed the speed of his vehicle when he saw or should have seen the Wade automobile in the intersection. Under these circumstances we think it was within the jury's province to decide if speed of the defendant's vehicle "was an element of the question of proximate cause." Consequently, we find no error in the

submission of the issues of negligence, contributory negligence, and proximate cause to the jury.

The assignment of error directed to the amount of the jury's verdicts is not discussed in the brief and, under our rules, will be considered to be waived. Todd v. Roane-Anderson Co., 35 Tenn.App. 687, 251 S.W.2d 132.

Judgment affirmed. Costs incident to the appeal are adjudged against defendants and their sureties.

McAmis, P. J., and Parrott, J., concur.