# JOSEPH A. WHEELER v. SARAH ELLEN WHEELER. —474 S.W.2d 651.

Eastern Section. October 8, 1971.

Certiorari Denied by Supreme Court December 20, 1971.

John A. Armstrong, Greeneville, for appellant.

Jimmy Gray Cutshaw, Greeneville, for appellee.

SANDERS, J. This is an apepal from a judgment where the Chancellor, at the conclusion of Complainant's proof, dismissed the complaint which sought to set aside a deed for want of consideration on grounds that Complainant had failed to carry the burden of proof.

The Complainant-Appellant, Joseph A. Wheeler, is a man 82 years of age, a widower with no children, in poor health, living alone in a rural area of Greene County, with no one except distant relatives or friends to look after his needs and welfare.

He was the owner of a 93.6-acre farm in the 7th Civil District of Greene County, Tennessee, and on July 7, 1970, reserving to himself a life estate in the property, executed a deed to the Defendant-Appellee, Sarah Ellen Wheeler. The Defendant is the niece of Complainant and no cash consideration was paid for the property.

On November 12, 1970, Complainant filed a bill in the Chancery Court of Greene County seeking to have the

deed voided and set aside on the theory that in consideration for his making the deed the Defendant had promised to take care of him the rest of his life; that for about two weeks after the deed was made, the Defendant kept her oral promise to take care of him, but then abandoned him and left him to his own resources.

In the Defendant's answer she denied the oral promise or that she had abandoned him and averred she had looked after and cared for the Complainant for the past seven years and this was the reason he had given her the deed.

The case was tried before The Honorable Walter Gray, Chancellor for Greene County, on oral testimony and, after hearing the testimony of the Complainant and his witnesses and without introduction of proof for the Defendant, found that the Complainant had failed to carry the burden of proof concerning the allegations in the original bill and dismissed Complainant's case.

A judgment was entered in keeping with the Chancellor's findings and the Complainant has appealed and assigned error.

The Complainant's assignment of error is that it was error for the Court to find, after hearing Complainant's proof, that he had failed to carry the burden of proof concerning the allegations contained in the original bill, and dismissed his cause.

We think the Court correctly found the issues in this case to be: (1) Did the Defendant make the promise alleged to have been made and (2) if so, did she abide by that promise?

The proof shows very convincingly that about two weeks after the deed was executed the Complainant was living alone and the Defendant did not visit him or make any effort to look after his needs. This brings us to the first issue and the crux of this lawsuit. That is, did the Defendant promise to take care of Complainant in consideration for his conveying her this property and, if so, was this the consideration going to the Complainant for which he made the deed? There is testimony in the record to support this issue, which now brings us to the proposition of whether the Chancellor was required to accept this testimony as making out a *prima facie* case or whether he could disregard it as not being credible proof.

In the trial of the cause, upon being questioned as to why he signed the deed, Complainant testified:

"Because I had confidence to believe that they would do what they said they would do. They said they would take care of me as long as I lived."

The Court: "Who is 'they'?"

A. "Her, for one."

Q. "Who is 'her'?"

A. "Sarah Ellen."

THE COURT: "What did she say?"

A. "She said she would take care of me as long as I lived."

Q. "Alright now Mr. Wheeler, did —what happened after you signed the deed with reference to her taking care of you?"

A. "Well, they quit coming about."

On cross-examination the Complainant was asked about his testimony in his pretrial deposition, which was as follows:

"Q. —Why did you sign the deed, Sir?

"A. Well, I reckon I signed it because I though I should.

"Q. Mr. Wheeler, isn't it a fact, they didn't—as you say 'they,' Sarah Ellen Wheeler didn't tell you she would do anything. You just told her several times that you wanted her to have that property after you died, and you made her a deed for it.

"A. Yes, but I expected her to do something for it.

"Q. Why did you single out Sarah Ellen Wheeler to make this deed to?

"A. Because of what she does."

In the trial of the cause it was evident that the Complainant responded much more readily to questions by his own counsel than io questions on cross-examination and he did not respond at all to many questions asked on cross-examination.

The Chancellor, in his comments on Complainant's testimony, said, "I might further say that Uncle Joe

Wheeler did not have any trouble answering his lawyer, but he had a right hard time answering the Defendant's lawyer. I am afraid, naturally he is an 82 year old man and sick and prejudiced.''

The Court obviously was not impressed with the credibility of the Complainant's testimony.

██ It is a well-settled principle of law in this state that self-contradictory statements by a witness without a plausible explanation cancel out the testimony of the witness. Tibbals Flooring Co. v. Stanfill, 219 Tenn. 498, 410 S.W.2d 892 (1967); Donaho v. Large, 25 Tenn.App. 433, 158 S.W.2d 447 (1941); Todd v. Rhoane-Anderson Company, 35 Tenn.App. 687, 251 S.W.2d 132 (1952).

In the case of Johnston v. Cincinnati, N. O. & T. P. Ry. Co., 146 Tenn. 135, 158, 240 S.W. 429, 436, the court said:

''The question here is not one of the credibility of a witness or of the weight of evidence; but it is whether there is any evidence at all to prove the fact. If two witnesses contradict each other, there is proof on both sides, and it is for the jury to say where the truth lies; but if the proof of a fact lies wholly with one witness, and he both affirms and denies it, and there is no explanation, it cannot stand otherwise than unproven. For his testimony to prove it is no stronger than his testimony to disprove it, . . . . ''

██ We think the Court was justified, insofar as the testimony of Complainant was concerned in finding that it was not credible testimony in support of the allegation that he had conveyed the property to the Defendant in consideration of her promise to take care of him.

The only other testimony supporting the Complainant's contention that the Defendant promised to take care of him is that of Mr. Dodson, a neighbor who testified he was present when the agreement was made. He testified that he was at the home of the Defendant on July 5 and participated in the conversation between the Complainant and Defendant. His testimony was:

"Q. Where were you when you had that conversation?

"A. I was over at her house. He was over there and I went over to see him, to see how he was.

"Q. What was the conversation between you and Sarah Ellen?

"A. I told him, I said, 'There has been two or three wills wrote, and,' I said, ' "You-uns" is the ones that is looking after him and "you-uns" should be the ones that gets it—gets what he has got.' And Uncle Joe said that he agreed on it,—a getting everything that he had, what money he had in the bank, his farm—if they would look after him and take care of him. That was on July the 5th, and on the 7th, they took him and had the deed made. —Of course, I never saw the deed.

"MR. CUTSHAW: Objection.

"THE COURT: Sustained.

"Q. Now when did you next talk to Sarah Ellen about the deed, if you did?

"A. After I had been over there and tried to get her to go see about him and take care of him. I said, 'He is

going to sue for his place back if you don't look after him and take care of him.' Me and my wife both went and asked her to see about him, and she said that Uncle Joe said 'if he wanted her to see about him, he would let her know about it.'"

On cross-examination Mr. Dodson testified as follows:

"Q. Did Sarah tell him that she would look after him as long as he lived?

"A. She took him on Tuesday and had the deed made—

"Q. That is not what I asked you. I asked you—Did she tell him that she would take care of him as long as he lived if he would sign the deed over to her?

"A. Yes, sir. She said she would take care of him and look about him.

"Q. Look about him?

"A. That is right. Take care of him and look about him, and anything he needed, she would get it for him."

It is apparent from remarks made by the Chancellor during the course of Mr. Dodson's testimony that he was not favorably impressed with Mr. Dodson. At one point, the Court said:

"THE COURT: The more Mr. Dodson argues, the less I am going to pay attention to what he says."

And again:

"THE COURT: Mr. Dodson, I have warned you once. Answer the questions and that is all.—Anything else?"

In the Chancellor's comments on his findings in the case, he said, ". . . . And the other three witnesses are members of the Dodson family, neighbors, and from their appearance on the stand they were all interested, I thought too much so, some of them."

Here, again, the Chancellor obviously questioned the credibility of this testimony.

The Defendant, in her brief, cites us to cases in support of well-established doctrine in this state that the trial judge's findings are entitled to great weight where he saw and heard the witnesses and observed their manner and demeanor on the stand and is therefore in a much better position to weigh and value their testimony than we are. Clardy v. Clardy, 23 Tenn.App. 608, 136 S.W.2d 526; Hepburn v. Milwaukee Mechanics Ins. Co., 27 Tenn. App. 612, 183 S.W.2d 772.

With this we agree and, if in this case the Chancellor were weighing the testimony of this witness against other credible proof in the record, we would feel compelled to sustain his findings.

■ However, in this case we think the rule, as stated by Judge McAmis in the case of Haun v. Brown (1962) 50 Tenn.App. 510, 362 S.W.2d 802, is controlling, where the Court said:

"In a law case tried without the intervention of a jury a motion to dismiss at the close of plaintiff's proof

in chief should be overruled if the plaintiff has succeeded in making out a prima facie case of liability. In determining that question the rule is much the same as that controlling the court's action on motion for peremptory instructions in a jury case. The Court is not called upon to weigh the evidence. Evidence contradictory to that supporting plaintiff's contention should be disregarded and he is entitled to the benefit of the testimony of a witness favorable to him even though contradicted by another of his own witnesses. In short, all doubt arising from the proof should be resolved in plaintiff's favor."

On a question of fact in a chancery case this same rule would apply.

We therefore feel constrained to sustain the Complainant's assignment of error.

The judgment of the trial court is reversed and the case remanded for a new trial. The cost of this appeal is taxed to the Appellee.

Cooper, P.J.(E.S.), and Parrott, J., concur.