IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

## STATE OF TENNESSEE  v. MICHAEL DWAYNE EDWARDS

**Direct Appeal from the Circuit Court for Henry County**
**Nos. 12756 & 12757    Honorable Julian P. Guinn, Judge**

---

**No. W1999-00591-CCA-R3-CD - Decided May 16, 2000**

---

The defendant directly appeals his jury conviction of burglary and challenges the sufficiency of the evidence by claiming, *inter alia*, that the "cancellation rule" should be applied to negate the inculpative testimony of a prosecution witness. Because we conclude that this is not a proper case for application of the cancellation rule and that the evidence is sufficient to support the verdict, we affirm the trial court's judgment.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which WADE, P. J., and WOODALL, J., joined.

Gregory D. Smith, Clarksville, Tennessee, attorney for the appellant

Paul G. Summers, Attorney General & Reporter, Kim R. Helper, Assistant Attorney General, Robert Radford, District Attorney General, attorneys for the appellee State of Tennessee

### OPINION

A Henry County Circuit Court jury convicted the defendant, Michael Dwayne Edwards, of the burglary of Pepper Chevrolet, an automobile business in Paris. In this direct appeal, the defendant singularly complains that the convicting evidence is legally insufficient to support the conviction. In part, he predicates this claim upon his argument that the "cancellation rule" negates the inculpative trial testimony of an accomplice, Gerald Jackson. After hearing oral argument and reviewing the record, the briefs and the applicable law, we affirm the conviction.

The centerpiece of the state's case was the testimony of Jackson, an accomplice who had been convicted and sentenced for the Pepper burglary. In the light most favorable to the state, Jackson's testimony showed that he and the defendant spent time together on the evening of January 23, 1998 drinking and smoking crack cocaine. In the wee hours of January 24, Jackson drove to Pepper Chevrolet, where he was employed. The defendant accompanied him in the car. Jackson parked the car and told the defendant that he was going to rob the company safe and that the

defendant should stay in the car and serve as a "lookout." Within sight of the defendant, who remained seated in the parked car, Jackson used a discarded tie rod to smash through the glass door of the building. In the office area, he tried to move the safe away from the wall but found it too heavy. He then summoned the defendant to help him, and the two men moved the safe and laid it on its back. Jackson, a trained welder and auto body worker, procured acetylene torch equipment from the company shop and used it to cut the hinges from the safe door, which allowed the two men to pry the door away from the safe. When the safe was thus opened, Jackson removed some cash and took a blank "payroll" check from the company's cache of printed checks. As they were leaving the building, Jackson took a new baseball-style cap, which bore a logo promoting Pepper Chevrolet, and gave it to the defendant.

The two used the cash to purchase crack cocaine and stayed in each other's company until about noon of the same day, when Jackson announced he wished to go to the bank to cash the "payroll" check. The defendant, wearing his new Pepper Chevrolet cap, accompanied Jackson but remained in the car when Jackson entered the bank. When Jackson attempted to pass the check, bank personnel notified the police. An officer, who had already investigated the scene of the burglary, arrived at the bank. He knew that a blank company check had been stolen and that the thieves had used an acetylene torch to cut open the safe. At the bank, he discovered that both Jackson and the defendant wore clothes which were sooty and smelled as if the wearers had been using an acetylene torch. Also, the defendant was sitting in the car and wearing a Pepper Chevrolet cap.

The officer testified that the torch smell of the pair's clothing was similar to the torch smell in the Pepper office. The proof showed that the safe weighed between 300 and 500 pounds and required more than one person to move.

The defendant neither testified nor offered any other witnesses. His complaint about the sufficiency of the evidence is largely centered upon the testimony of Jackson, who had given pretrial statements that indicated that the defendant was unconscious in the car during Jackson's burglary and that the defendant did not enter the Pepper building. In fact, Jackson had never maintained that the defendant was aware of the burglary and actually entered the building until he telephoned the district attorney general's office at 3:00 pm on the eve of the defendant's trial and reported the version of the crime that became the basis of his trial testimony. The defendant argues that Jackson's trial testimony conflicts with his earlier accounts of the crime, and for purposes of appellate review of the sufficiency of the evidence, the conflicting accounts cancel each other. Additionally, Jackson had an extensive criminal record, was a crack addict, and at the time of the defendant's trial was serving a year's incarceration. He was additionally charged with bringing contraband into the jail, and that charge remained unresolved at the time of the defendant's trial.

With this evidence in hand, the jury convicted the defendant of burglary. As is pertinent to the present case, "[a] person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault. . . ." Tenn. Code Ann. § 39-14-402(a)(1) (1997).

When an accused challenges the sufficiency of the convicting evidence, this court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App.1990).

In determining the sufficiency of the convicting evidence, this court does not re-weigh or re-evaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App.1990). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this court. Id. at 835. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), our supreme court said, "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the state."

Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Id. at 914.

The defendant cites State v. Matthews, 888 S.W.2d 446 (Tenn. Crim. App. 1993), for the proposition that "contradictory statements by a witness in connection with the same fact cancel each other out." Id. at 449. He argues that this cancellation rule negates Jackson's testimony and that without Jackson's testimony the state's case fails.

We begin our review of the sufficiency of the evidence by determining the applicability of the cancellation rule. This rule that "contradictory statements of a witness in connection with the same fact have the result of 'cancelling each other out,'" has been long recognized in Tennessee. Taylor v. Nashville Banner Pub. Co., 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978) (quoting Johnson v. Cincinnati, N.O. & T.P. Ry., 146 Tenn. 135, 240 S.W. 429, 436 (1922)) (citations omitted). However, the rule as quoted "says both too much and too little." State v. Roger Dale Bennett, No. 01C01-9607-CC-00319, slip op. at 9 (Tenn. Crim. App., Nashville, Dec. 31, 1998), perm. app. denied (Tenn. 1999). "Tennessee courts have uniformly applied the rule in those instances in which a witness's sworn statements are contradictory." Id. (emphasis in original);

see, e.g., Bowers v. Potts, 617 S.W.2d 149, 154 (Tenn. Crim. App. 1981); Taylor, 573 S.W.2d at 482; Wheeler v. Wheeler, 63 Tenn. App. 442, 474 S.W.2d 651 (Tenn. Ct. App. 1971). The Court of Appeals has restated the rule: "Two sworn inconsistent statements by a party are of no probative value in establishing a disputed issue of material fact." Price v. Becker, 812 S.W.2d 597, 598 (Tenn. Ct. App. 1991) (emphasis added). In fact, the inconsistent stories asserted to be the basis for applying the rule in Matthews emanated solely from a witness's trial testimony. Matthews, 888 S.W.2d at 449. This court has previously adopted and applied the rule that only sworn statements may be used for cancellation purposes. Roger Dale Bennett, slip op. at 9-10. In Roger Dale Bennett, we observed that a witness's "prior inconsistent statement [used to impeach that witness via Tennessee Rule of Evidence 613], by definition, will always contradict trial testimony but it does not render that testimony a nullity." Id., slip op. at 10. The prior inconsistent statement of a witness merely raises credibility issues for the trier of fact to resolve. Id. Also, a prior inconsistent statement is not substantive evidence, as is trial testimony. See State v. Martin, 964 S.W.2d 564, 567 (Tenn.1998).

In the present case, the statements contradicting Jackson's testimony were unsworn, and hence the cancellation rule is inapplicable. Jackson was vigorously cross-examined concerning a plethora of credibility issues, and it properly fell to the jury to resolve the merit and weight of his testimony.

As an aside, we note that the cancellation rule is inapplicable for a second reason, as well. The cancellation "rule applies only when inconsistency in a witness's testimony is unexplained *and* when neither version of his testimony is corroborated by other evidence." State v. Caldwell, 977 S.W.2d 110, 118 (Tenn. Crim. App. 1997) (emphasis added), perm. app. denied (Tenn. 1999). Explanation of inconsistent testimony or corroboration defeats the cancellation effect. See Matthews, 888 S.W.2d at 449. In the present case, Jackson explained his earlier statements which exculpated the defendant as his attempts to protect his drinking buddy. Moreover, the defendant's entry into the Pepper building is corroborated by circumstantial evidence that one person could not alone move the safe and by physical evidence which suggested that the defendant was present during the use of the acetylene cutting torch.

Thus, in reviewing the sufficiency of the evidence, we include the testimony of Jackson in the light most favorable to the state. Unquestionably, the evidence is sufficient to support the burglary conviction. Even though Jackson's credibility was challenged, the jury resolved that issue and the issue of the defendant's guilt. The risk – and peril – of persuasion is what a trial is all about. In an otherwise error-free trial when the evidence in the light most favorable to the state is sufficient to support the conviction, an appellant whose adversary has persuaded the trier of fact has no recourse. The appellate court must defer to the inferences drawn from, and the weight accorded to the evidence by the jury and to the jury's resolution of credibility issues. It was the jury's prerogative to believe Jackson. They obviously did, and because the accredited testimony and the other evidence in the case is sufficient to support the conviction, that conviction is affirmed.