## DONAHO v. LARGE.—158 S. W. (2d) 448.

Eastern Section. November 5, 1941.

Petition for Certiorari denied by Supreme Court, February 7, 1942.

W. E. Badgett, of Knoxville, for plaintiff in error.
Hodges & Doughty, of Knoxville, for defendant in error.

AILOR, J.  This is a suit by Lex D'onaho to recover damages for personal injuries received by him as a result of being struck by a truck driven by plaintiff-in-error.  A trial by jury resulted in a verdict and judgment in favor of the plaintiff for the sum of $3,000.  Defendant has prosecuted an appeal in error to this court and has assigned errors herein.

Plaintiff is a farmer and resides in Jefferson County near the town of White Pine.  At the time of the accident and injury complained of in this suit defendant was an enrollee in the Civilian Conservation Corps of the United States Government.  On the day in question, August 17, 1940, plaintiff had been to the town of White Pine in company with a man by name of Wesley Strange for the purpose of buying groceries.  They were returning to their homes by way of the highway connecting White Pine and Dandridge at the time of the accident which happened at about 8:30 P. M., and after darkness.

Defendant was regularly engaged in the discharge of his duties as driver of a truck operated by the Civilian Conservation Corps, and

was at the time transporting several other members of the same organization from Bristol, Tennessee, to Norris, Tennessee. He was also accompanied at the time by Albert G. Martin, a Lieutenant in the U. S. Marine Corps, who was acting as defendant's superior officer in charge of the truck and defendant and the other enrollees being transported. He is shown to have been an experienced driver and the truck he was driving was shown to have been equipped with a governor limiting its speed to 33 miles per hour.

Plaintiff and his companion started towards their homes on the highway leading from White Pine to Dandridge, walking on the right-hand side of same. They had reached a point about 400 yards from the city limits of White Pine at the time of the accident. It appears that the main highway from Newport to Morristown by way of White Pine was closed at the time to through traffic and that the White Pine-Dandridge route was being used as a detour for such traffic. It was heavily travelled at the time by vehicular traffic, and this fact was fully known to plaintiff. The improved portion of the road was variously estimated to be from 16 to 18 feet in width and of oiled macadam surface. Plaintiff and his companion proceeded on their own right-hand side of the highway, Strange walking on the right and plaintiff on the left. As cars proceeding in the same direction approached them they would step off of the improved portion of the highway if horns were sounded as a warning to them. Plaintiff was asked if he realized that there was a truck behind him, and he answered that he did not realize that there was one behind him until it had almost hit him. He says on direct examination that he and his companion were walking on the shoulder of the road at the time and not on the hard surface, and he states positively that no portion of his person was on the hard top of the road at the time. He says that he did not hear any horn sounded or see any lights from the truck before he was hit. However, on cross-examination plaintiff contradicts his first testimony to the effect that he was walking entirely off of the improved portion of the highway, answering: 'I was walking with one foot on the hard top and one on the shoulder.'' In this connection it appears that plaintiff signed a written statement soon after the collision in which he stated that he couldn't judge his position exactly, but that he was just walking on the right-hand edge of the macadam road. He admits that he made no effort to avoid being struck or to get out of the way of the truck approaching from his rear with its lights burning.

Plaintiff says that he did not see the reflection from the lights of the truck. But the substance of his testimony is to the effect that he paid no attention to lights of approaching cars. When asked if he was paying any attention to traffic approaching from behind him, he answered: ''Well I would step over when I would hear them blow.'' He did not step over for the truck for the reason that he did not hear its horn blown. He was then asked: ''And you were

waiting for the truck to blow before you stepped over? You didn't step over for the lights you waited until you heard it blow?" Answer, "Yes." He says as other cars would pass him, he would step one foot back onto the hard surface portion of the road.

Wesley Strange, plaintiff's companion at the time who was walking by his side to the right, saw the truck as it approached from their rear. When asked how long he had known of its approach he answered,, "Well I couldn't say exactly—cars passed us all along." He says that cars had met and passed them, and that cars had overtaken and passed them. He says that another car met them just before the accident going in the direction of White Pine. And he also says that they had met a car only about 50 feet from the point of the collision. But he specifically says that the truck had just passed a car going in the opposite direction at the time of the collision. He knew the truck was approaching, saw its lights and thinks plaintiff saw them. The substance of his testimony is that the lights of the truck were burning and plainly visible to one in the position of plaintiff, and that he could have seen them if he had been looking and using ordinary precaution for his own safety. There was nothing to hinder him from seeing the reflection of the lights.

■ Some attempt is made to establish the proposition that the accident took place within a residential district as prescribed by the provisions of the Tennessee Code, Sec. 2682, fixing the speed limit at 30 miles per hour. However, we think there is no evidence in the record supporting this proposition. The accident took place about 400 yards from the corporate limits of White Pine. And there is no insistence that there were any markers on the road indicating a speed zone limit. The proof is that it was at least 200 yards from the city limits to the first house on the road, and that they were separated a considerable distance along the highway. Under these circumstances we think it could not be successfully insisted that the accident happened in a limited speed zone. But there is a further reason why the proof fails to sustain any violation of such restriction. The truck in question was equipped with a governor limiting the speed to 33 miles per hour as a maximum speed. Defendant had no control over this governor, and under the circumstances had a right to rely upon its accuracy. Those attempting to fix the speed at which the truck was traveling in excess of this amount admitted that their attempts were pure estimates, and they demonstrated that they were not in position to make an accurate estimate of the speed of the truck. If the truck were running at the maximum speed permitted by the governor, any violation of the 30 mile per hour limit in residential districts would be more technical than real, and so slight an excess as would be difficult to determine, especially by one not shown to be proficient in making such estimates. There is no such proof in this case and we think this position is not sustained. There

was some other testimony on behalf of plaintiff, but it went rather to circumstances not controlling and we do not consider it in detail.

Defendant accounts for the accident in the following language: "I was coming out of White Pine about nine o'clock at night and got about a mile out of the business district. I was following a car out of White Pine, just before this accident happened a car coming toward me with bright lights and just then I saw two men right in front of me and I pulled over to the left to avoid striking them. I didn't really know whether I hit him until I heard the lick." He says that the front end of the car passed plaintiff, and this testimony is borne out by all of the testimony, which is to the effect that the extreme right-hand corner of the body of the truck was what came in contact with plaintiff. Defendant says that he blew his horn once, and that he pulled his truck to the left in an effort to avoid hitting plaintiff, but that he was only about 18 or 20 feet from them at the time he saw the men; that he was driving about 30 miles per hour, and did avoid striking him with the front of the car. He says that a car's lights blinded him and that he was practically on plaintiff and his companion when he saw them; that he pulled to his left as soon as he had passed the car which he was meeting. And he says that his view was further obstructed by the presence of a second car which was proceeding in the same direction in which he was going.

Lt. Martin was riding in the front seat with defendant at the time of the accident. He says that they were following a car going in the direction of Dandridge at the time of the accident, and that they were also meeting a car at or near the place of the accident. That by reason of the fact that he was riding on the right-hand side of the front seat he saw the plaintiff and his companion before the defendant could see them; that he called to him to "Look out," and that defendant immediately swerved the truck to the left in an effort to avoid a collision. He says that defendant swerved the truck as far to the left as he could without colliding with the car they were meeting. After he heard the lick indicating that they had hit plaintiff he told defendant to drive the truck on and get it as far off of the highway as possible, and this was done. No effort was made to stop the truck immediately as plaintiff had already been hit. This witness and other members of the crew administered first aid to plaintiff and tried to make him comfortable until an ambulance could be obtained. The testimony of defendant and of Lt. Martin is corroborated by others in the truck, but it is not necessary to detail this corroborating testimony.

A careful analysis of the material testimony of the plaintiff and his witnesses and the defendant and his witnesses discloses that there is very little variance. It is conceded by the plaintiff and his witnesses that defendant met an automobile just about the time of the collision. And while there is some conflict as to the proposition of whether or not a third car traveling in the same direction the truck

was going was in the immediate vicinity, it is admitted by the plaintiff and his witnesses that cars were going in either direction most of the time. It is true that plaintiff and his companion and the witness Street were recalled to the stand, and they attempted to explain away their first testimony to the effect that the truck just passed a car going in the opposite direction as it struck plaintiff. But if these statements have any effect at all they would only have the effect of contradicting the former statements, and cancelling each other out and leaving the statements of the defendant and his witnesses uncontradicted in this connection. It is a rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of canceling each other out. Johnson v. Cincinnati, etc., Ry. Co., 146 Tenn., 135, 240 S. W., 429; De Grafenreid v. Nashville Ry. & Light Co., 162 Tenn., 558, 39 S. W. (2d), 274.

It will thus appear from plaintiff's own admission that he was violating the provisions of Section 2687(d) of the Tennessee Code, as amended, and that he was guilty of negligence per se. The rule is well settled in this state that violation of a statutory duty constitutes conclusive evidence of negligence, negligence as a matter of law, or negligence per se. Stearns v. Williams & Price, 12 Tenn. App., 427; Carroll Blake Construction Co. v. Boyle, 140 Tenn., 166, 203 S. W., 945. See also 10 Tenn. Law Rev., No. 4, p. 314.

It becomes pertinent then to inquire as to whether or not plaintiff's negligence was the proximate cause of his injury. Plaintiff is charged with knowledge of the fact that he was violating the provisions of an Act of the Legislature enacted for his protection. His testimony to the effect that he and his companion had been stepping off of the highway on the approach of cars from their rear on hearing the horn sounded clearly indicates that he was apprised of the dangerous position in which he had placed himself. There is nothing in this record to indicate that plaintiff was not in full possession of all of his faculties at the time. In view of the fact that he had placed himself in a dangerous position it was his duty to use his faculties for hearing and seeing to avoid being struck. He was not only guilty of negligence per se by walking on his own right-hand side of the highway in violation of the provisions of the statute requiring pedestrians to walk on their own left side of the road, but he failed to use any degree of care for his own safety, when he knew or should have known that he was in immediate danger of being injured. His companion saw the lights of the approaching truck and knew it was approaching. Plaintiff fails to give any satisfactory explanation of his own failure to detect its approach and use reasonable precaution for his safety commensurate with the position in which he had placed himself. Under the circumstances we think the undisputed testimony establishes the fact that the plaintiff was guilty of contributory negligence barring his right of recovery.

■ The essence of contributory negligence on the part of the plaintiff necessary to bar his right of recovery is the same as actionable negligence on the part of a defendant. They both involve a breach of duty under all of the attending circumstances, or a failure to use reasonable care and diligence to avoid injury. Contributory negligence approximately contributing to the accident and injury complained of is a bar to a recovery by the plaintiff. This has long been the rule at common law in this state. Southern Railroad Co. v. Pugh, 97 Tenn., 624, 37 S. W., 555.

■ And it makes no difference whether the negligence of the plaintiff be slight or gross, if such negligence directly and proximately contributes to the accident and injury, it will bar a recovery on the part of plaintiff. Bejach v. Colby, 141 Tenn., 686, 214 S. W., 869.

■ The general rule is that every person has a right to presume that every other person will do his duty and obey the law. In this instance defendant had a right to presume that plaintiff would obey the law and would not deliberately walk on the wrong side of the highway and place himself in a position of danger and then completely fail to take any precaution for his own safety. P. & B. Storage Co. v. Lane, 11 Tenn. App., 237.

■ From all of which we think it necessary to conclude that plaintiff's own contributory negligence was the efficient and proximate cause of his injury and a bar to his recovery of damages in this suit. We do not feel it necessary to deal at any great length with the question of the negligence, if any, of defendant. According to the undisputed proof he did not see plaintiff in time to avoid the accident, and while the evidence might offer some foundation for an insistence that he should have seen him sooner still the result would be the same, if he were guilty of some negligence. We conclude that plaintiff was guilty of negligence per se by his conduct in walking along the right-hand side of the highway in violation of the provisions of the statute, and that same coupled with his failure to use any care or caution for his own safety while so doing constituted contributory negligence proximately responsible for his injury and barred his recovery. Assignment of errors to the extent indicated will be sustained, and the judgment of the lower court reversed and the suit dismissed.

Portrum and McAmus, JJ., concur.