**Phillip J. COOPER, Administrator Pendente Lite of the Estate of W.A. Bisson, Deceased, Plaintiff-Appellant,**

v.

**Charles AUSTIN, Defendant-Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Feb. 18, 1992.

Application for Permission to Appeal Denied by Supreme Court May 26, 1992.

Henry M. Beaty, Jr., Memphis, for appellant.

Jerry E. Mitchell, Harfey M. Yaffe, Memphis, for appellee.

CRAWFORD, Judge.

This is a will contest case involving a codicil to the Last Will and Testament of Wheelock A. Bisson, M.D., deceased. Phillip Cooper, Administrator *pendente lite* of

the estate, is a nominal party only; the real parties in interest are the proponent of the codicil, Alois B. Greer, and the contestant, Charles Austin.

Dr. Bisson's will, which is not contested, was executed June 18, 1982. Dr. Bisson died in 1985, and shortly thereafter Greer filed a petition in probate court to admit the June 18, 1982, will and two codicils thereto dated August 20, 1984, and August 6, 1985, respectively, to probate as and for the Last Will and Testament of Wheelock A. Bisson, M.D. By order entered November 26, 1985, the probate court admitted the paper writings to probate as the Last Will and Testament of Dr. Bisson.

On May 20, 1986, Austin filed a petition in probate court to contest the two codicils [1], and, after answer to the petition by Greer, the probate court certified the contest to circuit court by order entered August 13, 1986.

No action was taken in circuit court until the administrator pendente lite filed a "Complaint to Establish Will and Codicil" on November 9, 1988. Austin's answer to the complaint, inter alia, denied that either codicil had been properly executed by the decedent or properly witnessed and further denied that the codicils had any legal validity or effect.

Greer filed a motion for summary judgment in October, 1990, seeking to have Austin's case dismissed on the grounds that it was barred by T.C.A. § 32–4–108 (1986), because it was brought more than two years from the entry of the order admitting the will to probate. The trial court denied this motion.

On March 26, 1991, a jury trial was held on the issue of devisavit vel non as to the 1984 codicil. The 1982 will was introduced into evidence by stipulation, and Greer offered the 1984 codicil through the attesting witnesses.

In his 1982 will, Dr. Bisson left everything to his wife and if she predeceased him he left the majority of his estate to

Austin. This disposition was changed by the 1984 codicil which provides:

## CODICIL TO MY LAST WILL AND TESTAMENT

I, Wheelock Alexander Bisson, M.D., of 2312 Park Avenue, Memphis, Shelby County, Tennessee, this August 20th, 1984. Bequeath that my adopted daughter, Alois B. Greer, receive a child's share of my estate which will consist of all real property, personal property, household furniture and any and all savings which I might have at the time of my demise.

/s/ Wheelock A. Bisson, M.D.
WHEELOCK ALEXANDER BISSON, M.D.

/s/ Michael E. Harrison
WITNESS
3907 Kerwin Dr. Memphis, Tenn. 38138
ADDRESS

/s/ Charles L. Harrison
WITNESS
4905 Sagewood, Mphs., TN. 38116
ADDRESS

Sworn to and subscribed before me this 20th day of August, 1984.

/s/ Lillie M. Thomas
NOTARY PUBLIC
My Commission Expires:
Jan. 5, 1987

On direct examination, Michael Harrison stated that he signed the codicil in the presence of Dr. Bisson. He then gave the following testimony regarding that signing:

Q. All right. When you got ready to sign did Dr. Bisson indicate to you what you were signing as a witness?

A. Yes. At the time I had no idea what a codicil was.

Q. All right.

A. But I did—I did witness it.

On cross examination, Michael Harrison gave the following testimony:

---

1. The codicil dated August 6, 1985, made no property disposition, but merely appointed Greer as executrix of the estate. During the course of the circuit court trial, the proponent withdrew this codicil from evidence. Since it is not involved in this appeal we will omit further reference to it in this Opinion.

Q. All right. You didn't know what this document was now you've got in front of you at the time you signed it. Correct? This is one dated August, 1984.

A. I didn't understand your question.

Q. Well, Dr. Bisson didn't tell you what it was, he just said he needed a paper signed and notarized. Right?

A. He didn't tell me anything. I was asked to witness the document. He told Ms. Thomas. She notarized it, I was asked to witness it.

Q. At the time did you know what the document was—

A. No, sir.

Q. ... that you were witnessing? Pardon me?

A. No, sir.

Q. And Dr. Bisson didn't tell you what it was?

A. No, sir.

Q. You didn't ask anybody what it was?

A. No, sir.

Charles Harrison, the other witness appearing on the 1984 codicil, testified on direct examination pertinent to the issue before us:

Q. All right. Do you recall the occasion when you signed this document?

A. Yes, sir.

Q. Okay. Will you give us the background as to how you came to be involved with this document at all?

A. On this particular day, the 20th of August, 1984, we were on our way back from Memorial Park—the rotunda at the Memorial Park Cemetery, and Dr. Bisson was seated on the front seat of the limousine with me.

And he said, when you get back, you know, to my place—which he referred that was his home—he said, when you get back to my place, he said, I have something I want you all to do for me. And so I said, well, okay, Doc. And that was that. And so the rest of the people that was in the limousine they were just carrying on casual conversation. So when we got back to his residence on Park Avenue we were letting them out of the limousines and he said, don't

leave, come on in, I have something, you know, I want you to take care of for me. And so he asked me where was Ms. Thomas. I said, well, she's at the funeral home. He said, well, call her and tell her to come down here, I need her—you know, I need her here, you know, on this too. And so when we got inside—We came through the side entrance and we went up to his front office. And he said, I have this codicil that I want you all to notarize for me and witness, and that's how I came in contact with him.

Q. All right, sir. Now, at the time that this document was signed were you present?

A. Yes, sir.

Q. and did you see Dr. Bisson sign this document?

A. Yes, sir.

Q. Was your brother Michael also present?

A. Yes, sir.

Q. And all three of you were together at the time; is that correct?

A. Yes, sir.

Q. Ms. Thomas is on there as a notary. Was she also in the room or was she not?

A. No, she was in the room. Yes, sir.

Q. All right. And Dr. Bisson asked you all to sign this; is that correct?

A. Yes, sir.

Q. And all three of you signed it in each other's presence?

A. That's correct.

\* \* \* \* \* \*

The pertinent testimony from Charles Harrison on cross examination is:

Q. Now, Dr. Bisson didn't tell you what was in the document that you were signing. Correct?

A. No, he did not.

Q. And he didn't tell you what the document was?

A. Yes, sir, he did.

Q. Well, let me ask you. Do you recall giving a deposition, meaning when you came to my conference room up at my office January 14, 1987 and you swore to tell the truth, and there was a court

reporter—it wasn't this woman, but another woman with a machine like that that took down your testimony? Do you recall that?

A. January the 14th of '87?

Q. Yes, sir.

A. I remember coming to your office, yes, sir.

Q. All right.

A. I don't remember the exact date, but I do remember coming to your office.

Q. Have you had a chance to look over this document—this deposition transcript?

A. No, sir.

Q. I asked you on page 40 at that time when you were under oath, I said—At line 3 you said, I just glanced over it. I didn't stop, I just glanced over it.

Question: (Line 5) Did Dr. Bisson tell you what was in it?

Answer: No, sir.

Question: Did he tell you what it was?

Answer: No, sir.

Was that your testimony at that time? Would you agree with me that your memory was probably better about this in January of 1987, which would be, what, four years ago?

A. I'm not playing with my memory, but I'd say that—well, you know, I—

Q. Would you accept that as the truth if that's what you said then?

A. Yes, sir.

Q. So Dr. Bisson didn't elaborate as to what the document was, he said I want you to witness a document. He had the document already. Right?

A. Right.

Q. You didn't give it to him?

A. No.

Q. Okay. And then he signed it and he said, okay, now you sign it, and that was it. Correct?

A. Yes, sir, basically. He didn't say sign it, he said witness it.

Q. Witness it. And then there wasn't any more conversation about it after you witnessed it, y'all got up and left. Correct?

A. Right.

On re-direct examination, Charles Harrison testified as follows:

Q. Mr. Harrison, be very careful now and think regarding both what you said previously and what you just said.

Are you absolutely certain that Dr. Bisson told you what it was he wanted you to witness?

A. MR. MITCHELL: Note my objection to the leading, Your Honor. He never testified he knew what it was.

THE COURT: He did testify, I believe, in his direct-examination. He said that Dr. Bisson said he had a codicil that he wanted witnessing.

MR. MITCHELL: Yes, sir, that's all he said.

Q. (BY MR. BEATY) Is that what you recall today as to what he said?

A. Yes, sir.

MR. BEATY: That's all I have.

Charles Harrison's re-cross examination is:

Q. But that was before you ever went in the room?

A. I beg your pardon.

Q. That was before you ever went into the room, that was when you were out in the car?

A. Right.

Q. When you went in the room he didn't say what it was or what was in it, just like you testified four years ago, right?

A. Right.

Lillie Thomas, who appears as a notary public on the 1984 codicil, testified that all Dr. Bisson said in her presence was that he had a paper that he wanted her to notarize and that he said nothing in her presence about the paper being a will, a codicil or anything of that sort. We quote from the testimony:

Q. All right. And what did Dr. Bisson say about it in your presence?

A. He said I have a—he said a paper that I want you to notarize for me.

Q. All right. did he use any language: will, codicil, anything of that sort?

A. No. He said a paper.

Q. All right. Did he sign it in your presence?

A. Yes, sir.

Q. Did he sign it in the presence of the other witnesses?

A. Yes, sir.

Q. Now Michael Harrison was present?

A. Yes, sir.

Q. And Charles Harrison, also; is that correct?

A. Yes, sir.

Following the testimony of these witnesses, counsel for Austin moved the court to disallow submission of the codicil to the jury on the grounds that the codicil's proponent, Mrs. Greer, had not met her burden of proof pursuant to T.C.A. § 32–1–104, regarding the manner in which a will must be executed.

The trial court granted Austin's motion and directed a verdict on the grounds that Ms. Greer had not proved the proper execution of the codicil. Accordingly, judgment was entered declaring that the last will and testament of Wheelock A. Bisson dated June 18, 1982, be admitted to probate without any codicils.

■ Greer has appealed and presents two issues for review. The first issue is whether the trial court erred in denying Greer's motion for summary judgment on the grounds that Mr. Austin's will contest was barred by T.C.A. § 32–4–108 (Supp. 1991) which provides:

All *actions* or *proceedings* to set aside the probate of any will, or petitions to certify such will for an issue of **devisavit vel non**, must be brought within two (2) years from entry of the order admitting the will to probate, or be forever barred, saving, however, to persons under the age of eighteen (18) years or of unsound mind at the time the cause of action accrues, the rights conferred by § 28–1–106. (Emphasis added.)

Greer contends that this statute bars Austin's action, because the 1984 codicil was admitted to probate by order entered November 26, 1985, and Austin filed no pleading in circuit court until he filed an answer to the complaint on December 2, 1988. Greer argues that the filing of the complaint in circuit court was the commencement of the action pursuant to Rule 3, Tennessee Rules of Civil Procedure, and, because it was filed more than two years from the order of probate court admitting the will to probate, the action is barred by the two year statute of limitations in T.C.A. § 32–4–108.

■ We must respectfully disagree with Greer for several reasons. The statute itself is clear and unambiguous. It is confined to actions to set aside the probate of a will or to petitions to certify a will for an issue of devisavit vel non. Obviously, the proceedings contemplated by this statute are proceedings that take place in the probate court. It is equally clear that the proceeding in the circuit court on the issue of devisavit vel non after the case is certified from the probate court to the circuit court is in substance an original proceeding to probate the will, separate and distinct from any proceedings held in probate court. *Bearman v. Camatsos*, 215 Tenn. 231, 385 S.W.2d 91 (1964); *Arnold v. Marcom*, 49 Tenn.App. 161, 352 S.W.2d 936 (1961). In a proceeding of this nature, no particular form of pleading is required. All that is required is that the proponent shall offer it as a will and the contesting party shall deny it. See *Bowman v. Helton*, 7 Tenn.App. 325 (1928).

Finally, it has long been held in this state that the right of a contestant to resist the probate of a will is a preliminary matter and presents a separate and distinct issue from the issue of devisavit vel non, and that the order of the probate court sustaining or denying the right to contest the will is an appealable order. See *Winters v. American Trust Co.*, 158 Tenn. 479, 14 S.W.2d 740 (1929). T.C.A. § 32–4–108 clearly applies only to this separate action.

We hold that the statute of limitations set out in T.C.A. § 32–4–108 applies only to the proceeding filed in the probate court seeking to set aside the probate of a will or a certification for a will contest.

■ The second issue for review is whether the trial court erred in directing a

verdict for the contestant Austin by refusing to allow the 1984 codicil to be submitted to the jury.

The rule for determining a motion for directed verdict requires the trial judge and the reviewing court on appeal to look to all of the evidence, taking the strongest legitimate view of it in favor of the opponent of the motion and allowing all reasonable inferences from it in his favor. The court must discard all countervailing evidence, and if there is then any dispute as to any material determinative evidence or any doubt as to the conclusion to be drawn from the whole evidence, the motion must be denied. *Tennessee Farmers Mut. Ins. Co. v. Hinson*, 651 S.W.2d 235 (Tenn.App. 1983).

The court should not direct a verdict if there is any material evidence in the record that would support a verdict for the plaintiff under any of the theories he has advanced. *See Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521 (Tenn.1980).

The formal requirements for the execution of a will are set out in T.C.A. § 32–1–104 (1984), which provides:

**Will other than holographic or nuncupative.**—The execution of a will, other than a holographic or nuncupative will, must be by the signature of the testator and of at least two (2) witnesses as follows:

(1) The testator shall signify to the attesting witnesses that the instrument is his will and either:

(A) Himself sign;

(B) Acknowledge his signature already made; or

(C) At his direction and in his presence have someone else sign his name for him; and

(D) In any of the above cases the act must be done in the presence of two (2) or more attesting witnesses.

(2) The attesting witnesses must sign:

(A) In the presence of the testator; and

(B) In the presence of each other.

Austin contended, and the trial court agreed, that Greer's proof failed to establish that Dr. Bisson did "signify to the attesting witnesses that the [1984 codicil] is his will ..." as required by the statute. Greer argues that the testimony of the attesting witnesses was sufficient to create an issue of fact for the jury as to whether Dr. Bisson so signified.

Austin relies primarily upon the case of *Lawrence v. Lawrence*, 35 Tenn.App. 648, 250 S.W.2d 781 (1951) which involved a will without an attestation clause and where the only surviving attesting witness testified both that the testatrix informed her that the instrument to be witnessed was the testatrix's will and also testified to the contrary by stating that she did not know that the instrument was a will. The Court of Appeals, in directing a verdict against the will, said:

The meaning of this statute is clear, plain and unambiguous. When a testator calls upon persons to witness his will, " 'the testator shall signify to the attesting witnesses that the instrument in his will'." Surely it cannot be contended that this provision of the statute is doubtful of meaning. It simply means that the testator must state to the witnesses in substance that the paper writing is his will and that he wants them to sign it as witnesses.

By the uncontradicted evidence before us that essential requisite of the execution of a valid will is lacking. The testatrix did not signify to the attesting witnesses that the instrument was the will of testatrix.

250 S.W.2d at 784.

Austin contends that the cases relied upon by Greer—*Whitlow v. Weaver*, 63 Tenn.App. 651, 478 S.W.2d 57 (Tenn.App. 1970); *Needham v. Doyle*, 39 Tenn.App. 597, 286 S.W.2d 601 (1955); and *Miller v. Thrasher*, 36 Tenn.App. 88, 251 S.W.2d 446 (1952), and *In re Estate of Bradley*, 817 S.W.2d 320 (Tenn.App.1991)—all involve wills which contained an attestation clause. He concedes that an attestation clause raises a strong presumption that the recitals therein contained are true and that contrary evidence raises a question for the jury. *Needham*, 286 S.W.2d at 601. We

agree that these cases are distinguishable on their facts.

Greer also relies upon *Leathers v. Binkley*, 196 Tenn. 80, 264 S.W.2d 561 (1954). In *Leathers,* the will did not contain an attestation clause and the two attesting witnesses testified that they had signed the will in the presence of the testatrix and in the presence of each other. Neither witness testified specifically that the will had been declared by the testatrix to be her will at the time of the signing. In holding in favor of the will, the Court said:

> While it is true that neither Mr. Morrison nor Mrs. Gilmer remembered every detail of the signature and attestation of the will, the important fact in the record is that there was neither from Morrison, Mrs. Gilmer, nor the Notary Public, *a line of positive affirmative testimony that would support the allegations of the petition of contest, nor the verdict of the jury, that the will had not been regularly and legally executed in strict accordance with the requirements of Code, sec. 8089.4.*
>
> "Where, for instance, the subscribing witnesses testify that they do not recollect the circumstances, but do recognize their signatures, and declare that they would not have placed them to the instrument unless they had seen the testator sign it, or heard him acknowledge his signature, the due execution may be presumed." Sizer's Pritchard on Wills, sec. 336, p. 380.
>
> "In establishing the facts essential to the validity of the will by a preponderance of the evidence, proponents are, however, not obliged in all cases to prove each fact by direct evidence; but they may rely upon presumptions. There is, at the outset, no presumption that the alleged testator executed the will in question or any will; but when a paper propounded as a will is shown to have been signed by the alleged testator and the requisite number of witnesses, *in the absence of any satisfactory evidence to the contrary* the presumption is that all the formalities have been complied with." (Our Emphasis.) Page on Wills, Vol 2, sec. 755, p. 462.

> The forgoing statement is supported by cases from many jurisdictions, including Georgia, Illinois, Iowa, Missouri, Montana, New Jersey, New Mexico and South Carolina. Compare: Annotations, 47 L.R.A., N.S., 722; 76 A.L.R. 604; 14 L.R.A., N.S., 255; Ann.Cas. 426.

264 S.W.2d at 563. (Emphasis added.)

Austin asserts that *Leathers* is not controlling authority for the case at bar because in *Leathers* there was no positive affirmative testimony that the will had not been regularly and legally executed. We agree with Austin that *Leathers* turned on that point, so we must examine the testimony in the case at bar to determine if there is uncontroverted positive testimony that Dr. Bisson did not "signify to the attesting witnesses" that the 1984 instrument was his will or codicil.

In examining the testimony of the witnesses, we must look at the testimony in the best light and afford to it all legitimate inferences. With that direction in mind, we will examine the testimony.

Charles Harrison's testimony is to the effect that prior to the gathering of attesting witnesses, notary public and testator, testator told him that he, the testator, had "this codicil that I want you all to notarize for me and witness." He specifically pointed out that this statement by Dr. Bisson was made before the gathering for the signing of the instrument.

Michael Harrison's testimony indicates both that he was told by Dr. Bisson that it was a codicil to be witnessed and that Dr. Bisson did not tell him what it was that he was witnessing. He specifically testified that he did not know what the document was. These contradictory statements effectively eliminate any testimony from this witness on that fact. *Taylor v. Nashville Banner Pub. Co.,* 573 S.W.2d 476 (Tenn.App.1978) cert. den. 441 U.S. 923, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979); *Donaho v. Large,* 25 Tenn.App. 433, 158 S.W.2d 447 (1941).

Lillie Thomas, the notary public, testified that Dr. Bisson said he had a paper to be witnessed and he did not use any language

such as will, codicil or anything of that sort. Dr. Bisson's statement was made at the time the parties gathered for the signing.

An examination of the witness' testimony indicates that there is uncontroverted affirmative proof that Dr. Bisson did not signify to at least one attesting witness that the instrument to be witnessed was his will or a codicil thereto. Therefore, the trial court correctly directed a verdict against the admission of the will.

The judgment of the trial court is affirmed and this case is remanded to the trial court for such further proceedings as may be necessary.

Costs of the appeal are assessed against the appellant.

TOMLIN, P.J. (W.S.), and HIGHERS, J., concur.