IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 17, 2007 Session

## MAGGIE LEE BANKS v. JACK C. SANFORD, M.D., ET AL.

Direct Appeal from the Circuit Court for Shelby County
No. CT-005645-03    Kay S. Robilio, Judge

No. W2006-00703-COA-R3-CV - Filed May 3, 2007

After receiving a routine hormone injection, the plaintiff patient experienced pain, facial swelling, numbness, and blindness. The plaintiff filed a complaint against the clinic, its employee physician, and the employer of the nurse who had administered the injection, alleging medical malpractice. The defendant clinic and physician filed a motion for summary judgment, and attached the expert affidavit of the defendant physician in which he stated that all of the defendants had treated the plaintiff in accordance with the relevant standard of care and according to their best medical judgment. After the physician's deposition was taken, the plaintiff filed a motion for a determination by the trial court that his previously filed affidavit had been filed in bad faith, citing alleged inconsistencies with his deposition testimony and discovery admissions. The nurse's employer filed a motion for summary judgment that relied upon the physician's deposition testimony that the nurse had acted in accordance with the relevant standard of care and that the actions of the nurse had not caused the plaintiff's injuries. A hearing was held at which the trial court denied the plaintiff's motion to find that the physician's affidavit had been made in bad faith, and the trial court allowed the plaintiff additional time in which to produce expert proof of causation. After the plaintiff was unable to obtain expert proof, the trial court ultimately granted the defendants' motions for summary judgment. The plaintiff filed a timely notice of appeal. Finding no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

William T. Winchester, Memphis, TN, for Appellant

Albert C. Harvey, Andrea N. Malkin, Memphis, TN, for Appellee, Jack C. Sanford, M.D., and Memphis Mid-South OB/GYN Alliance, P.C.

Brock East, Memphis, TN, for Appellee, Med Temps Personnel Services

# OPINION

## I. FACTS AND PROCEDURAL HISTORY

On October 7, 2003, the plaintiff, Maggie Lee Banks ("Ms. Banks" or "Appellant"), filed a complaint in Shelby County Circuit Court alleging negligence by Dr. Jack Sanford, M.D. ("Dr. Sanford"), his medical group, Memphis Mid-South OB/GYN Alliance, P.C. ("OB/GYN Alliance"), medical assistant LaTonya Morgan[1] ("Ms. Morgan"), and her employer, Med Temps Personnel Services ("Med Temps"). Appellant's complaint was based upon complications arising after a routine hormone injection that Ms. Morgan administered to Ms. Banks at Dr. Sanford's office on October 11, 2002. Ms. Banks claimed to have experienced pain, facial swelling, and numbness immediately after receiving this injection. Ms. Banks claimed that she was subsequently diagnosed by another physician as having sciatica or a sciatic nerve injury. Ms. Banks alleged negligence and gross negligence by Ms. Morgan in administering the injection, that her injury had been aggravated through a "misdiagnosis" by Dr. Sanford as a reaction to the injection, and that Med Temps had been negligent, grossly negligent, and reckless for allowing Ms. Morgan to work and provide services. Ms. Banks requested a jury trial and sought damages of $5 million, past, present, and future medical expenses, and costs.

Dr. Sanford, OB/GYN Alliance, and Med Temps filed answers denying liability. On May 14, 2004, Dr. Sanford and OB/GYN Alliance filed a motion for summary judgment, accompanied by a statement of undisputed facts and an affidavit of Dr. Sanford in which he stated that all medical treatment provided to Ms. Banks had been in conformity with the relevant professional standard of care. Dr. Sanford's deposition was taken on April 13, 2005. On May 31, 2005, Ms. Banks filed a motion for a determination by the trial court that the affidavit of Dr. Sanford had been made in bad faith, alleging some of his statements to be contradictory to his responses to requests for admission and deposition testimony.

Med Temps filed its motion for summary judgment on June 2, 2005, citing Dr. Sanford's deposition testimony in which he had opined that Ms. Morgan had not deviated from the applicable standard of care while administering the injection and that no act or omission on her part had caused Appellant's injuries. Further discovery was conducted among the parties, and on September 2, 2005, a hearing was held at which the trial court denied Ms. Banks's motion for a determination that Dr. Sanford's affidavit had been made in bad faith.[2] The trial court allowed Ms. Banks thirty days in which to obtain an expert competent to testify regarding the causation of her injury. On October 12, 2005, Appellant had not produced an affidavit from an expert physician, and the trial court granted summary judgment in favor of Med Temps.

---

[1] Ms. Morgan was never served with this complaint, therefore it appears she was never made a party to this lawsuit and is not before this Court as a party on appeal. The other defendants, Dr. Sanford, Memphis Mid-South OB/GYN Alliance, P.C., and Med Temps Personnel Services shall be referred to collectively as "Appellees."

[2] The trial court entered an order denying this motion on February 10, 2006, *nunc pro tunc* for September 2, 2005.

On January 6, 2006, the remaining defendants, Dr. Sanford and OB/GYN Alliance, filed a motion to compel the production of an expert affidavit. Ms. Banks had identified her intended expert witness as one Dr. Kraus, but as of January 27, 2006, the plaintiff had still not yet produced an affidavit reflecting his expert opinion, despite the entry of a consent order in which she had agreed to produce the affidavit by this date. On February 23, the trial court granted Dr. Sanford and OB/GYN Alliance's motion for summary judgment. Ms. Banks filed a notice of appeal to this Court.

## II. ISSUES PRESENTED

On appeal, Ms. Banks alleges error with two aspects of the trial court's ruling in favor of the defendants on summary judgment:

1. Whether the trial court abused its discretion in denying Appellant's motion to find that Dr. Sanford's affidavit had been made in bad faith.

2. Whether the trial court properly granted motions for summary judgment as to Dr. Sanford, OB/GYN Alliance, and Med Temps, when Ms. Banks failed to offer expert testimony establishing causation of her injuries by the hormone injection administered by Ms. Morgan.

Finding no error, we affirm the judgment of the trial court.

## III. STANDARD OF REVIEW

"The party moving for summary judgment must affirmatively negate an essential element of the nonmoving party's claim, or conclusively establish an affirmative defense. . . . When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts." *Patterson v. Arif*, 173 S.W.3d 8, 11 (Tenn. Ct. App. 2005) (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)). In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, courts in this state have indicated that the trial court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Byrd v. Hall*, 847 S.W.2d 208, 210-11 (Tenn. 1993). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04 (2006). Our review of the trial court's grant of summary judgment is *de novo* on the record before this Court, with no presumption of correctness. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

"The court's imposition of sanctions for discovery abuses and for the filing of a Rule 56 affidavit in bad faith is discretionary. 'On appeal, the exercise of discretion by a trial court in

imposing sanctions will not be disturbed in the absence of an affirmative showing of abuse.'" ***Crawford v. Beatty***, 108 S.W.3d 877, 880-81 (Tenn. Ct. App. 2003) (citing ***Brooks v. United Uniform Co.***, 682 S.W.2d 913, 915 (Tenn. 1984)). "An abuse of discretion occurs when the trial court reaches a decision against logic that causes a harm to the complaining party or when the trial court applies an incorrect legal standard." ***Riley v. Whybrew***, 185 S.W.3d 393, 399 (Tenn. Ct. App. 2005) (citing ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001)). "The decision of the trial court 'will be upheld so long as reasonable minds can disagree as to the propriety of the decision [of the trial court].'" ***Id.*** (citing ***State v. Scott***, 33 S.W.3d 746, 751 (Tenn. 2000)).

## IV. Discussion

Appellant argues that the affidavit submitted by Dr. Sanford in support of Alliance's motion for summary judgment contained statements that were inconsistent with his responses to requests for admission and his deposition testimony. Based on this position, Ms. Banks filed with the trial court a motion to declare the affidavit of Dr. Sanford was made in bad faith. Appellant claims the trial court erred when it denied this motion at the summary judgment hearing, and that it improperly shifted the burden to her to come forward with an expert as to causation of her injuries. Appellant alternatively posits that even if we find no abuse of discretion by the trial court as to this ruling, that Dr. Sanford's allegedly inconsistent statements regarding the standard of care and causation should have been treated as no evidence, making summary judgment in favor of Appellees inappropriate.

Rule 56.08 of the Tennessee Rules of Civil Procedure provides as follows:

> Should it appear to the satisfaction of the trial court at any time that any of the affidavits presented pursuant to this rule are presented in bad faith or solely for the purpose of delay, the court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Tenn. R. Civ. P. 56.08 (2006). In consideration of the language of Rule 56.08, we believe it is appropriate to consider this Court's adopted definition of the term "bad faith":

> the opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with furtive design or ill will.

*Contemporary Media, Inc. v. City of Memphis*, No. 02A01-9807-CH00211, 1999 Tenn. App. LEXIS 298, at *10 (Tenn. Ct. App. May 11, 1999) (citing Blacks's Law Dictionary 127 (5th ed. 1979)).

Actions alleging medical malpractice are governed by the Tennessee Medical Malpractice Act, which provides in relevant part:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
>
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115 (Supp. 2006). Therefore, in a medical malpractice action, the plaintiff has the burden of proof on the following elements: standard of care, breach of the standard of care, and causation. *Payne v. Shumake*, No. 02A01-9901-CV-00006, 1999 Tenn. App. LEXIS 846, at *8 (Tenn. Ct. App. Dec. 15, 1999). In order to establish each of these elements, the plaintiff must put forth expert evidence, unless the allegedly negligent act lies within the common knowledge of the layman. *Id.* (citing *Bowman v. Henard*, 547 S.W.2d 527, 530-32 (Tenn. 1977); *Ayers v.*

*Rutherford Hosp., Inc.*, 689 S.W.2d 155, 160 (Tenn. Ct. App. 1984)). The Tennessee Rules of Evidence address expert opinions as follows:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence. The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness.

Tenn. R. Evid. 703 (2006).

In Dr. Sanford's affidavit, he stated that he was "familiar with the recognized standard of professional practice for physicians in the specialty of obstetrics and gynecology in Memphis or a similar community during the times referenced by the plaintiff in the Complaint." Paragraphs 6 and 7 of Dr. Sanford's affidavit read:

> 6.      In all of the medical treatment administered by me, any employee of Mid-South OB/GYN Alliance, P.C., and LaTonya Morgan, Med Temps employee and independent contractor, we acted according to our best medical judgments.
> 7.      The medical treatment administered by me, employees, of Memphis Mid-South OB/GYN Alliance, P.C., and LaTonya Morgan, Med Temps independent contractor, was administered in accordance with the recognized standard of acceptable professional practice as existed for physicians, nurses, and other medical personnel in Memphis or similar community [sic].

In response to Appellant's requests for admissions, Dr. Sanford admitted that he "did not discuss the manner in which LaTonya Morgan administered the hormone shot" with Ms. Morgan herself. In response to the request, "Admit that the plaintiff's condition could be caused by an improperly administered injection," Dr. Sanford stated, "Admitted, in addition to other causes."

Appellant contends that these statements made throughout discovery were later contradicted by Dr. Sanford at his deposition, in several respects. Appellant's counsel questioned Dr. Sanford at length regarding how, if he had not discussed the procedure with Ms. Morgan, Dr. Sanford was able to ascertain that her actions had been in accordance with the relevant standard of care. Dr. Sanford explained that prior to the hormone injection, he had personally conducted a complete physical examination of Ms. Banks. He then instructed Barbara Lepard ("Ms. Lepard"), a laboratory technician, to administer the hormone injection, who in turn delegated this task to Ms. Morgan. Dr. Sanford recalled that some time after Ms. Banks received the hormone injection from Ms. Morgan,

Ms. Lepard had notified him that Ms. Banks had reported pain, swelling of the face, and blindness. Dr. Sanford said that he then went back to see Appellant in the treatment room and, after conducting another complete examination including an inspection of the injection site, he opined that Ms. Banks had experienced an adverse effect reaction based upon her body's absorption of certain preservatives in the injection.

Dr. Sanford testified that he was familiar with the standard of care for administering hormone injections, and that the shot had to be administered in the upper, outer quadrant of the buttocks. Dr. Sanford stated that he based his opinion that Ms. Morgan had complied with the relevant standard of care for the procedure on statements made to Ms. Lepard by Ms. Morgan, his own discussions with Ms. Lepard, and his personal examination of Appellant after she had reported the adverse reaction. Finding no contradictions in Dr. Sanford's opinions, and applying Rule 703 of the Tennessee Rules of Evidence, we find that the trial court did not abuse its discretion in denying Appellant's motion to declare that Dr. Sanford's motion was made in bad faith in this regard.

Appellant further argues that in contrast to Dr. Sanford's representation in his affidavit that he was familiar with the relevant standard of care, he "became very elusive about whether there was a standard of care for administering hormone injections." We disagree with Appellant's characterization of this testimony, finding that Dr. Sanford provided extensive and consistent testimony regarding the standard of care for the procedure. Therefore, finding no affirmative showing by Appellant of abuse by the trial court, we do not disturb its decision to deny Appellant's motion regarding Dr. Sanford's affidavit.

Ms. Banks alternatively relies upon the legal argument that "by making inconsistent statements throughout [the] proceedings, Defendant Jack Sanford's expert affidavit constituted 'no proof'; therefore, the burden never shifted to the Plaintiff to produce an expert affidavit opposing Defendants' summary judgment motions." We have already concluded that Dr. Sanford's expert opinion regarding the standard of care was consistent throughout the proceedings. However, Appellant also places considerable emphasis on Dr. Sanford's opinion regarding the causation of her injuries. Ms. Banks cites the following discovery request and response in support of her position:

> Request No. 11: Admit that the Plaintiff's condition could be caused
> by an improperly administered injection.
> Response: Admitted, in addition to other causes.

Appellant claims that this admission is inconsistent with the following exchange that occurred at Dr. Sanford's deposition:

> Q.      And based on your experience as a doctor, is it your opinion
> that LaTonya Morgan did not cause any sciatic nerve damage or
> sciatica condition in Mrs. Banks?
> A.       I don't think she was – as I saw Mrs. Banks an hour and a half
> later and as I have seen her with these visits, I do not believe the shot

caused a sciatic nerve injury. Now, the sciatica is a horse of a different color. That probably starts all the way back to the back surgery that was done at Methodist Central, I guess, looking back at the records.

Q.    But there was no action or omission by LaTonya Morgan which resulted in the sciatica condition?

A.    I do not believe so, no.

"It is a rule of law in this state that contradictory statements of a witness in connection with the same fact have the result of 'cancelling each other out.'" ***Taylor v. Nashville Banner Publishing Co.***, 573 S.W.2d 476, 482 (Tenn. Ct. App. 1978) (citing ***DeGrafenreid v. Nash. Ry. & Lt. Co.***, 162 Tenn. 558, 39 S.W.2d 274 (1931); ***Johnson v. Cincinnati N.O. & T.P. Ry. Co.***, 146 Tenn. 135, 240 S.W. 429 (1922); ***Donaho v. Large***, 25 Tenn. App. 433, 158 S.W.2d 447 (1941); ***Southern Motors, Inc. v. Morton***, 25 Tenn. App. 204, 154 S.W.2d 801 (1941); ***Nashville & American Trust Co. v. Aetna Cas. & Sur. Co.***, 21 Tenn. App. 366, 110 S.W.2d 1041 (1937)). We do not believe, despite Appellant's contentions otherwise, that Dr. Sanford's deposition testimony was in any way inconsistent with his discovery admissions. Appellant fails to recognize that Dr. Sanford's statements regarding causation were in response to two very different questions. Dr. Sanford admitted that, in general, Ms. Banks's condition could be caused by an improperly administered injection, "in addition to other causes." However, the questioning of Dr. Sanford at deposition was far more specific, with Appellant's counsel inquiring whether the specific injection delivered by Ms. Morgan caused Ms. Banks's condition, to which the doctor responded in the negative. Since none of the statements cited by Appellant appear to be contradictory, we believe that the aforementioned decisions cited by her, in support of the argument that Dr. Sanford's testimony about the standard of care and causation amounted to "no evidence," are inapplicable to the case at bar.

We now must address the trial court's grant of summary judgment in favor of Dr. Sanford, Alliance, and Med Temps, based upon their properly filed motions and the attached expert affidavit and deposition testimony of Dr. Sanford stating that Appellees had acted according to the relevant standard of care and that no act or omission by Ms. Woodard had caused Appellant's injuries. "[W]hen a motion for summary judgment is used defensively, the plaintiff's case may be dismissed if, after being given a reasonable opportunity to substantiate its claims, the plaintiff has failed to establish the essential elements of its case on which it will bear the burden of proof at trial." ***Blair v. Allied Maint. Corp.***, 756 S.W.2d 267, 270 (Tenn. Ct. App. 1988) (citing ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986); ***Moman v. Walden***, 719 S.W.2d 531, 533 (Tenn. Ct. App. 1986)). "[I]n those malpractice actions wherein expert medical testimony is required to establish negligence and proximate cause, affidavits by medical doctors which clearly and completely refute plaintiff's contention afford a proper basis for dismissal of the action on summary judgment, in the absence of proper responsive proof by affidavit or otherwise." ***Fitts v. Arms***, 133 S.W.3d 187, 190 (Tenn. Ct. App. 2003) (citing ***Bowman v. Henard***, 547 S.W.2d 527, 531 (Tenn. 1977)). This threshold may be satisfied by affidavits made by experts who are also defendants. ***Id.*** (citing ***Smith v. Graves***, 672 S.W.2d 787, 789-90 (Tenn. Ct. App. 1984)). In order for a defendant's affidavits to effectively refute a claim of medical malpractice, they must present

facts rebutting the allegations of the plaintiff's complaint as to at least one of the three statutory elements for medical malpractice actions. *Id.* (citing **White v. Methodist Hosp. S.**, 844 S.W.2d 642, 648 (Tenn. Ct. App. 1992)).

In support of their motion for summary judgment, Dr. Sanford and OB/GYN Alliance relied upon Dr. Sanford's expert affidavit stating that he was familiar with the relevant standard of care, and that Ms. Morgan had acted in accordance with this standard when administering the hormone injection to Ms. Banks. Appellant opposed this motion with the affidavit of a nurse, Pamela Davis, in which the affiant expressed her own familiarity with the relevant standard of care for nurses, and stated that "the method that Latonya Morgan used to administer the hormone injection was outside the accepted standard of care for nurses, or anyone else, giving hormone injections." Ms. Davis also stated that "[Ms.] Morgan required [Ms.] Banks to stand on her tip toes and thrust out her buttocks, causing a twisting motion which changed the normal landmarks for administering an intramuscular injection." Ms. Davis also explained her opinions regarding the standard of care later at her deposition.

Even if we were to find that Ms. Davis was a competent expert on the relevant standard of care for hormone injections, Appellant never came forward with expert proof that would rebut Dr. Sanford's deposition testimony that the hormone injection administered by Ms. Morgan had not caused Appellant's injuries. In addition to Dr. Sanford's affidavit regarding Appellees' conformity with the applicable standard of care, this deposition testimony was relied upon by Dr. Sanford, OB/GYN Alliance, and Med Temps in support of their motions for summary judgment. The trial court correctly ruled that the deposition testimony of Appellant's nurse expert, Pamela Davis, was not sufficient to establish a causal connection between any acts or omissions by Ms. Morgan and Appellant's injuries. "In medical malpractice cases causation is generally a matter requiring expert testimony." **Dolan v. Cunningham**, 648 S.W.2d 652, 654 (Tenn. Ct. App. 1982). This Court has previously held that causation is outside the scope of expertise of nurses. *See* **Richberger v. West Clinic, P.C.**, 152 S.W.3d 505, 510 (Tenn. Ct. App. 2004) (citing **Bishop v. Smith & Nephew Richards**, No. 02A01-9405-CV-00108, 1995 Tenn. App. LEXIS 148, at *15 (Tenn. Ct. App. Mar. 10, 1995); **Nash v. Goodlark Hosp.**, No. 89-406-II, 1990 Tenn. App. LEXIS 322, at *4-5 (Tenn. Ct. App. May 4, 1990)); *see also* Tenn. Code Ann. § 63-7-103(b) (Supp. 2006) (providing that "the practice of professional nursing does not include acts of medical diagnosis"). Furthermore, at her deposition, Ms. Davis admitted that she was not competent to express an opinion as to causation:

> Q. Does the sciatic nerve branch out?
> A. Yes.
> Q. Where does it begin to branch out at?
> A. I don't know.
> Q. Is this something that's outside your area of expertise?
> A. Yes.
> Q. So you don't feel qualified, I guess, to testify as to the sciatic nerve or medical causation issues in this case?
> A. Correct.

Q. And your testimony would be limited solely as to the manner in which the injection was given?
A. Correct.
Q. And you can't testify as to whether the manner in which this injection was given caused any health issues?
A. That's correct.

Accordingly, once Dr. Sanford, OB/GYN Alliance, and Med Temps relied upon Dr. Sanford's deposition testimony in support of their motions for summary judgment, the trial court properly shifted the burden to Appellant to come forward with expert testimony that would illustrate a genuine issue of material fact as to the causation element of the underlying medical malpractice claim. Appellant was not able to do so, despite being given ample opportunity by the trial court, therefore summary judgment in favor of Appellees was appropriate.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs are assessed against Appellant, Maggie Lee Banks, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

-10-